# In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 02-2051

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

JAMES R. GIBSON,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Illinois.
No. 01 CR 30005 GPM—**G. Patrick Murphy**, Chief Judge.

_____

ARGUED SEPTEMBER 15, 2003—DECIDED JANUARY 28, 2004

_____

Before POSNER, KANNE, and ROVNER, Circuit Judges.

KANNE, Circuit Judge. After the entry of a guilty plea by James R. Gibson pursuant to the former Rule 11(e) (1)(C) of the Federal Rules of Criminal Procedure,[1] the district court accepted the plea agreement and thereby agreed to the sentence specified in the agreement. Gibson received—and is currently serving—the precise term of imprisonment he bargained for, but he now seeks to invalidate the sentence and plea agreement. Gibson's indictment included eight counts, five of which (any of three counts of Mail Fraud or

---

[1] The plea agreement was entered and accepted prior to the effective date—December 2002—of amended Rule 11.

two counts of Wire Fraud) would have provided a legal basis for the 262-month prison sentence agreed to by Gibson. However, as we discuss below, the single count to which Gibson pled guilty, Conspiracy under 18 U.S.C. § 371, has a statutory maximum sentence of five years and therefore does not allow the 262-month sentence stipulated to in the plea agreement. Because the sentence exceeds the maximum term of imprisonment of the statute of conviction, we must vacate the sentence, conviction, guilty plea, and the court's acceptance thereof.

## I.  History

Gibson's criminal indictment stemmed from his activities as owner and president of SBU, Inc. and several affiliated companies. The companies were operated by Gibson in the St. Louis, Chicago, and West Palm Beach areas. SBU offered tax-advantaged structured settlements to personal-injury plaintiffs. Gibson marketed SBU by representing to personal-injury victims that he would use their settlement money to purchase United States Treasury Bonds and hold these bonds in trust for the victims. Gibson promised to make periodic payments to the victims from the proceeds of the investments. Some of the settlement funds were placed with legitimate trust companies and funded with bonds.

Gibson transferred all of the trust accounts to Flag Finance Corporation, another corporation wholly owned and operated by Gibson. Gibson stopped purchasing Treasury obligations for most of the trusts and instead used new settlement proceeds and bond proceeds in his own unauthorized business transactions, high-risk investments (including the operation of a chain of grocery stores that eventually sought bankruptcy protection), and the purchase of real estate and personal luxury items. The total loss to the individual victims in this case was $156,256,316.92.

In July 1999, Gibson and his wife received a grand jury subpoena. They attempted to avoid the investigation by fleeing to Central America, but were eventually arrested and returned to the United States. On October 18, 2001, a grand jury returned an eight-count indictment against Gibson.

Gibson was charged with Conspiracy to Commit Mail and Wire Fraud in violation of 18 U.S.C. § 371 (Count 1); Mail Fraud on August 20, 1996, in violation of 18 U.S.C. § 1341 (Count 2); Mail Fraud on September 17, 1996 (Count 3); Mail Fraud on January 27, 1998 (Count 4); Wire Fraud on June 6, 1996, in violation of 18 U.S.C. § 1343 (Count 5); Wire Fraud on January 7, 1998 (Count 6); Conspiracy to Commit Money Laundering in violation of 18 U.S.C. § 956(h) (Count 7); and a Forfeiture allegation pursuant to 18 U.S.C. § 982 (Count 8).

Gibson's trial commenced on January 7, 2002. On January 8, before the jury was sworn, Gibson came to an agreement with the government, quoted below in relevant part:

1.  The Defendant will enter a plea of guilty to count one of the Superseding Indictment charging a violation of Title 18, United States Code, Section 371, Conspiracy to Commit Mail and Wire Fraud which affects the safety and security of a financial institution. *The maximum penalty that can be imposed for each violation of § 371 is 30 years' imprisonment* or a $1,000,000 fine, or both, and at least 5 years supervised release.

2.  The Defendant understands that he is entering a guilty plea whereby the Government and the Defendant have agreed, pursuant to 11(e)(1)(C), to a sentence of 262 months, the maximum fine of $250,000, and restitution in the amount of $66,000,000. . . . The court will determine the appropriate amount of supervised release.

(Def.'s Plea Agrmt. at 3-4) (emphasis added). The plea agreement mistakenly states that the maximum statutory sentence under 18 U.S.C. § 371 is thirty years. As noted earlier, the actual maximum statutory sentence is five years. In another part of the agreement, Gibson waived his right to appeal his sentence and acknowledged his waiver of the right to trial and his understanding of the charge set forth in the plea. The government promised not to prosecute Gibson in the Southern District of Illinois for any other crimes known at the time of the agreement.

The district judge conducted the requisite colloquy with Gibson after receiving this agreement. He advised Gibson as to the relevant provisions of Rule 11. The judge inquired into Gibson's age and education and informed him of the rights he was giving up by pleading guilty. The judge determined both that Gibson was competent and understood the nature of the charge to which he was pleading guilty by describing the elements of the crime of Conspiracy to Commit Mail Fraud and Wire Fraud. Gibson informed the judge that he was cognizant of all the preceding information and affirmed that he willingly relinquished his rights. The district court accepted Gibson's guilty plea and deferred acceptance of the plea agreement until after review of the presentence report.

In due course, a Presentence Investigation Report ("PSR") was prepared by a probation officer. The PSR repeated the parties' mistake, first made in the plea agreement, that Count 1, "Conspiracy to Commit Mail and Wire Fraud 18 U.S.C. §§ 1341, 1343, and 371," carried a maximum sentence of thirty years.

The PSR calculated Gibson's sentencing range under the Federal Sentencing Guidelines based, not on 18 U.S.C. § 371 (Conspiracy), but on violation of 18 U.S.C. §§ 1341 (Mail Fraud) and 1343 (Wire Fraud). His offense level totaled 41 (a base offense level of 6, with numerous enhance-

ments), his criminal history category was II, and his guideline range was therefore 360 months to life imprisonment. The PSR concluded that a prison sentence of 360 months was appropriate.

While accepting the findings of the PSR, the district judge determined that the Rule 11(e)(1)(C) plea agreement was acceptable in setting 262 months as the term of imprisonment. This departure from the Sentencing Guidelines in favor of Gibson was justified as appropriate because of Gibson's age (57 at the time of sentencing), his cooperation in recovering some of the converted money after his apprehension, and the elimination of a need for a trial by Gibson's acceptance of responsibility.

Gibson, initially proceeding "pro se" on appeal, asserted legal error in his sentence, although that issue was never raised below at any point in the process.[2] It seems that, while coming to an agreement on the amount of prison time, supervised release, fines, and restitution, neither the government nor Gibson observed that Count One, Conspiracy to Commit Mail and Wire Fraud, carries a maximum statutory penalty of only five years. Had the parties substituted any one of Counts 2 through 6, a maximum statutory penalty of thirty years would have been applicable, as the offenses affected a financial institution. *See* 18 U.S.C. §§ 1341 and 1343. Unfortunately, the probation officer did not catch the parties' mistake and thus did not alert the district judge to the error.

Both parties now agree, however, that the sentence as it stands is illegal. Gibson asserts that we must vacate the sentence because it is illegal or, alternatively, because the

---

[2] Gibson did object to several of the findings in the PSR, but never took issue with the finding that he was subject to a thirty-year statutory maximum sentence.

misstatement of the law during the Rule 11 process led to an involuntary plea agreement. The government asserts that we do not have jurisdiction to review the sentence and that Gibson has waived review of his sentence; alternatively, the government requests that we affirm the sentence, in spite of the error.

## II. Analysis

Before moving to an analysis of the merits, we must first ascertain whether we have the power to provide the relief requested by Gibson. We do not have the power to preserve a guilty plea under Fed. R. Crim. P. 11(e)(1)(C), yet "discard the sentence imposed by the district court." *United States v. Barnes*, 83 F.3d 934, 941 (7th Cir. 1996). In other words, because the plea agreement entered into by Gibson and the government contained explicit provisions regarding the exact term of imprisonment, Gibson can only attack the validity of the entire plea agreement. He cannot seek to uphold the plea agreement, yet obtain relief in the form of a different sentence. *See United States v. Peterson*, 268 F.3d 533, 534 (7th Cir. 2001). In essence, Gibson cannot hold out hope that we will order the district court to enforce the plea agreement and yet reduce his sentence to five years. To the extent that Gibson does request the relief precluded by *Barnes*, we reaffirm the principle cited above and refuse to consider the request.

Contrary to the assertions of the government, however, Gibson does request that this court void the entire plea agreement and remand for further proceedings—either a new round of negotiations between the government and Gibson or a trial. (Appellant's Br. at 14-15, 19.) We have the power to provide this relief. *See, e.g., Barnes*, 83 F.3d at 941.

There is also a question as to whether Gibson has effectively waived his right to appeal his sentence. Gibson signed a plea agreement that included the following clause:

> The Defendant is aware that Title 18, United States Code, Section 3742 affords a defendant the right to appeal the sentence imposed. Acknowledging all this, the Defendant knowingly and voluntarily *waives the right to appeal any sentence within the maximum provided in the statute(s) of conviction* (or the manner in which that sentence was determined) on the grounds set forth in Title 18, United States Code, Section 3742 or on any ground whatever, including any ordered restitution, in exchange for the concessions made by the United States in the plea agreement. . . .

(Def.'s Plea Agrmt. at 5) (emphasis added). A voluntary and knowing waiver of an appeal is valid and enforceable. *United States v. Sines*, 303 F.3d 793, 798 (7th Cir. 2002) (citations omitted). By the terms of the plea agreement, however, Gibson has not waived an appeal of a sentence that exceeds the maximum sentence provided for in the statute of conviction, which is the case here. Furthermore, the claim that a plea agreement was entered into involuntarily cannot be waived in the plea agreement. *Id.* Thus, we will consider the appeal on its merits.

Gibson argues that the district court erred in accepting a plea agreement that included an illegal sentence and that he did not knowingly and voluntarily enter a guilty plea. When a defendant fails to object on these grounds while still before the district court, we apply the "demanding standard of plain error." *United States v. Gilliam*, 255 F.3d 428, 433 (7th Cir. 2001). As Gibson moves to withdraw his guilty plea for the first time before this court, to provide such relief we must find under the plain error standard: "(1) an error has occurred, (2) it was 'plain,' (3) it affected a substantial right of the defendant, and (4) it seriously

affected the fairness, integrity, or public reputation of the judicial proceedings." *Id.*

As we commented above, Gibson was sentenced on Count 1 to an agreed term of imprisonment of more than twenty-one years—far beyond the five-year maximum under 18 U.S.C. § 371. However, "[e]ven when a defendant, prosecutor, and court agree on a sentence, the court cannot give the sentence effect if it is not authorized by law." *United States v. Greatwalker*, 285 F.3d 727, 730 (8th Cir. 2002).

Because Gibson's sentence exceeds the maximum term of imprisonment set forth in the statute of conviction, there was error in accepting this plea agreement. And because this error is apparent from the language of 18 U.S.C. § 371, the error was "plain." Further, the imposition of a sentence exceeding the statutory maximum affects a defendant's substantial rights. *Cf. United States v. Robinson*, 250 F.3d 527, 529-30 (7th Cir. 2001) (noting that an increased sentence because of plain error under *Apprendi v. New Jersey*, 530 U.S. 466 (2000), affects a defendant's substantial rights).

But the heart of the inquiry is whether the district court's error in accepting the plea agreement seriously affected the fairness, integrity, or public reputation of the judicial proceedings. Although we have not found cases applying the plain error standard to the factual scenario in the instant case, we have stated that we will overturn a criminal conviction under this standard only when "necessary to avoid a miscarriage of justice." *United States v. Raney*, 342 F.3d 551, 559 (7th Cir. 2003) (noting that even if evidence was improperly admitted at a jury trial, there is no miscarriage of justice if the defendant's guilt was so clear that he would have been convicted anyway). Likewise, technical misstatements of the law by a trial judge at a sentencing hearing do not "impugn the integrity of the proceedings"

when the error does not "alter [the defendant's] decision-making calculus." *United States v. Kelly*, 337 F.3d 897, 905 (7th Cir. 2003).

Gibson and the government utilized former Rule 11(e)(1)(C) in structuring the plea agreement. This rule stated in relevant part:

> [The parties] *agree that a specific sentence* or sentencing range *is the appropriate disposition of the case*, or that a particular provision of the Sentencing Guidelines, or policy statement or sentencing factor is or is not applicable to the case. Such a plea agreement is binding on the court once it is accepted by the court.

Fed. R. Crim. P. 11(e)(1)(C) (2002) (emphasis added). The parties in forming the agreement may have concluded that the statutory maximum sentence for Mail Fraud or Wire Fraud (30 years) could be imported into the Conspiracy count. Although it is unclear how or why this error occurred, it is clearly not, as the government argues, a mere "scrivener's error."[3]

Gibson does not dispute that he has received the precise amount of prison time for which he bargained. Nor does he dispute that, had he been tried under the eight-count in-

---

[3] *Black's Law Dictionary* defines "scrivener's error" as a synonym for "clerical error." A "clerical error" is one "resulting from a minor mistake or inadvertence, esp. in writing or copying something on the record, and not from judicial reasoning or determination." *Black's Law Dictionary* 563 (7th ed. 1999). Examples of clerical, or "scrivener's," errors include "omitting an appendix from a document; typing an incorrect number; mistranscribing a word; and failing to log a call." *Id.* Here, the parties apparently had Count 1, Conspiracy, in mind before and after the transcription. The mistake was not one of transcription, but of legal knowledge or analysis.

dictment or had the parties used one of the wire or mail fraud counts in the plea agreement instead of the conspiracy count, a 262-month sentence would have been acceptable upon conviction. Indeed, Gibson makes no argument that the error at issue affects the fairness, integrity or public reputation of the judicial proceedings.[4]

The fact remains, however, that Gibson was sentenced to a term of imprisonment that exceeds the maximum provided in the count of conviction. To allow an illegal sentence to stand would impugn the fairness, integrity, and public reputation of the judicial proceedings that have taken place in this case. This error was not harmless.

There is no doubt that the district judge would not have accepted the plea agreement knowing that the maximum term of imprisonment was five years, or, if given the opportunity, would have reached the same result we do today. Clearly the integrity of the judicial system would be offended by ignoring this error even in a case involving facts as egregious as those asserted against Gibson.

### III.  Conclusion

As to the statute of conviction, 18 U.S.C. § 371 (Count 1), we VACATE the sentence, conviction, guilty plea and acceptance thereof and REMAND this case to the district court for further proceedings.

---

[4]  There is no claim made, for example, that Gibson did not misuse his position of trust to bilk millions of dollars from orphans, widows, and individuals with disabilities relying on the stream of payments he promised to provide for medical and other family expenses.

A true Copy:

Teste:

_____
*Clerk of the United States Court of
Appeals for the Seventh Circuit*

USCA-02-C-0072—1-28-04