In the

# United States Court of Appeals
## For the Seventh Circuit

No. 05-4327

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JAMES R. GIBSON,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Southern District of Illinois.
No. 01 CR 30005—**J. Phil Gilbert**, *Judge.*

ARGUED FEBRUARY 23, 2007[1]—DECIDED JUNE 19, 2007

Before POSNER, KANNE, and ROVNER, *Circuit Judges.*

KANNE, *Circuit Judge.* After a flight from justice and a botched plea agreement, a jury convicted James Gibson of one count of conspiracy to commit mail and wire fraud in violation of 18 U.S.C. § 371, three counts of mail fraud in violation of 18 U.S.C. § 1341, two counts of wire fraud in violation of 18 U.S.C. § 1343, one count of conspiracy to commit money laundering in violation of 18 U.S.C.

---

[1] An opinion in this case was issued on March 16, 2007 and a judgment was entered. The court, on its own motion, withdrew the opinion and on March 19, 2007, the judgment was vacated to allow time for supplemental briefing.

§ 1956(h), and one count setting forth forfeiture allegations pursuant to 18 U.S.C. § 982. Gibson was sentenced to 480 months' imprisonment. Over Gibson's arguments, the district court determined that the statute of limitations had not run on any of the charges against him due to his flight from justice and the subsequent passage of 18 U.S.C. § 3296 allowing for the reinstatement of charges dismissed pursuant to a plea agreement. We affirm.

## I. BACKGROUND

Gibson was the owner and president of SBU, Inc. and several other companies in and around St. Louis, Missouri. SBU arranged tax-advantaged structured settlements in personal injury cases. Gibson told his clients that their structured settlements would be funded with United States Treasury obligations, such as Treasury Bonds, which would be transferred to a third-party trustee and held in irrevocable and segregated trusts for each client's sole benefit. The clients would receive periodic payments from the interest and proceeds from the redemption of these Treasury obligations. SBU's clients arranged for their personal injury settlement funds to be sent directly to Gibson personally.

After a period of legitimate operation, Gibson stopped buying Treasury obligations with his clients' settlement funds. Instead he spent $16,856,000 of his clients' money on unauthorized business transactions, high risk investments, and purchases of real estate and luxury items for his own use. Gibson then began redeeming the Treasury obligations he had already purchased for his clients and likewise spending the proceeds for himself. The total loss to Gibson's clients was $156,194,810.92, many of whom needed the money to support themselves and fund necessary medical treatment.

Gibson's attorney informed him that he was under investigation for his management of client funds. He and his wife set sail to Belize and wired $3,478,352 of his client's trust funds to Belize bank accounts. They returned briefly to the United States, but departed for Belize again in July 1999.

On January 18, 2001, Gibson was charged in a suppressed indictment with: one count of conspiracy to commit mail and wire fraud in violation of 18 U.S.C. § 371, three counts of mail fraud in violation of 18 U.S.C. § 1341, two counts of wire fraud in violation of 18 U.S.C. § 1343, one count of conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h), and one count setting forth forfeiture allegations in violation of 18 U.S.C. § 982. Gibson was arrested in Belize on May 10, 2001 and returned to the United States. The indictment was unsealed on May 10, 2001 as a result of Gibson's arrest. A superseding indictment was returned on October 18, 2001, adding Gibson's wife as a defendant.

On January 8, 2002, Gibson pled guilty to one count of conspiracy to commit mail and wire fraud in violation of 18 U.S.C. § 371. Pursuant to a plea agreement, the government dismissed the remaining seven counts and Gibson was sentenced to 262 months' imprisonment. Unfortunately, this plea agreement was based on the erroneous belief (by all involved) that the maximum statutory sentence under § 371 was thirty years' imprisonment. In reality, the maximum sentence was just five years' imprisonment. Gibson appealed, and this court vacated his guilty plea, conviction, and sentence and remanded to the district court for further proceedings. *United States v. Gibson*, 356 F.3d 761, 767 (7th Cir. 2004) (*Gibson I*).

This court's mandate was entered on February 26, 2004. Under 18 U.S.C. § 3296, the government then had sixty days to move to reinstate the counts of the indictment that

were dismissed pursuant to the plea agreement. The government so moved on March 26, 2004 and the charges were reinstated on July 14, 2005.[2]

Prior to trial, Gibson moved the district court to reconsider its ruling permitting the government to reinstate all of the counts in the indictment that had been dismissed pursuant to his plea agreement. He argued that the five year statute of limitations had run on the allegations contained in Counts two, three, and five of the indictment. The earliest of the charged conduct, contained in Count five, occurred on June 6, 1996. The district court held that the statute of limitations was tolled during the twenty-two months that Gibson was hiding in Belize, and that 18 U.S.C. § 3296 was passed before the newly calculated limitations date, allowing for reinstatement of the charges.

Gibson was tried by a jury and convicted of all counts on the indictment. He was sentenced to 480 months' imprisonment and three years' supervised release, and was ordered to pay a special assessment of $700 and restitution in the amount of $83,282,767.42.

## II. ANALYSIS

Gibson raises two issues on appeal: (1) whether this court had the authority to vacate his guilty plea on his first direct appeal; and (2) whether Counts two, three, and five of the indictment were properly reinstated.

---

[2] Gibson's case was originally assigned to Chief Judge Murphy in the district court. Judge Murphy was forced to recuse himself after Gibson made a credible threat that he would have Judge Murphy killed. R. 382. Gibson also fired several appointed counsel and eventually decided to proceed *pro se*. Judge Murphy's recusal, Gibson's numerous counsel, and a variety of pretrial motions delayed the reinstatement of the charges.

*A. Authority to Vacate Guilty Plea*

Gibson argues that on his original direct appeal from his guilty plea, we should have vacated his sentence, but upheld his guilty plea. This would limit Gibson's sentence to the five-year statutory maximum. We considered and rejected this argument the first time Gibson raised it. *Gibson I*, 356 F.3d at 765. Gibson's guilty plea was entered and accepted prior to the effective date of the 2002 amended FED. R. CRIM. P. 11 under subsection (e)(1)(C).[3] In *Gibson I* we stated: "[B]ecause the plea agreement entered into by Gibson and the government contained explicit provisions regarding the exact term of imprisonment, Gibson can only attack the validity of the entire plea agreement." 356 F.3d at 765. We cannot preserve a plea under Rule 11(e)(1)(C) but dispose of the sentence. *Id.* at 765 (citing *United States v. Barnes*, 83 F.3d 934, 931 (7th Cir. 1996); *United States v. Peterson*, 268 F.3d 533, 534 (7th Cir. 2001)). Gibson alternatively requested that we void the entire agreement and remand for further proceedings. We did so, and Gibson has given us no reason to reconsider that decision.

*B. Reinstatement of Charges*

Gibson next argues that Counts two, three, and five of the indictment were improperly reinstated on July 14, 2005 because the five-year statute of limitations had already run. We review the district court's ruling regarding the statute of limitations *de novo. United States v. Daniels*, 387 F.3d 636, 641 (7th Cir. 2004); *United States v. Pearson*, 340 F.3d 459, 464 (7th Cir. 2003), *vacated on other grounds, sub nom. Hawkins v. United States*, 543 U.S. 1097 (2005).

---

[3] Now embodied in FED. R. CRIM. P. 11(c)(1)(C).

The first step in our analysis is to calculate the bar date, which requires us to determine whether any tolling provisions apply. "No statute of limitations shall extend to any person fleeing from justice." 18 U.S.C. § 3290. The statute of limitations and its tolling provisions are designed to allow the government time to investigate crimes while protecting individuals from defending against charges for distant offenses. *United States v. Marshall*, 856 F.2d 896, 899-900 (7th Cir. 1988). Section 3290 "reflects the congressional belief that where the defendant impedes the discovery and prosecution of his criminal conduct by 'fleeing from justice,' his right to avoid prosecution for distant offenses is diminished while the government's need for additional discovery time is strengthened." *Id.* at 900. In order for § 3290 to toll the statute of limitations while the defendant has fled, the government must prove by a preponderance of the evidence that the defendant fled with the intent to avoid arrest or prosecution. *Id.*; *see also United States v. Elliot*, 467 F.3d 688, 690 (7th Cir. 2006).

The government has more than met its burden on this issue. Gibson admitted to federal agents that his attorney informed him that he was under investigation prior to his departure and indicated that he left in anticipation of criminal charges. Gibson set up Belize corporations to hide his assets and gave no legitimate purpose for doing so. His wife testified that they had discussed the possibility of criminal liability for their use of the trust money and that they were concerned that they may be arrested upon their departure from the United States in July 1999.

Because the date of the earliest conduct charged in the indictment was June 6, 1996, we will use that date to illustrate the limitations analysis. Under 18 U.S.C. § 3282, the statute of limitations for non-capital offenses is five years. Accounting for the twenty-two months during which the statute was tolled due to Gibson's flight to Belize, the

new bar date was in April 2003. After this court vacated Gibson's guilty plea, the government did not move for reinstatement of the charges against him until March 26, 2004. If this were the end of the story, the charges against Gibson in Counts two, three, and five of the indictment would not be timely. However, this is not the end of the story.

The second step in our analysis is to determine whether reinstatement of the charges was proper notwithstanding the statute of limitations. On November 2, 2002, 18 U.S.C. § 3296 became effective, allowing for reinstatement of the counts of an indictment when: "(1) the counts sought to be reinstated were originally filed within the applicable limitations period; (2) the counts were dismissed pursuant to a plea agreement approved by the district court under which the defendant pled guilty to other charges; (3) the guilty plea was subsequently vacated on the motion of the defendant; and (4) the United States moves to reinstate the dismissed counts within 60 days of the date on which the order vacating the plea becomes final." 18 U.S.C. § 3296(a).

Gibson does not argue that any of § 3296's requirements are not met, only that because the section was not in place at the time he committed the crimes, its application in this case would be impermissibly *ex post facto*. But it is well settled law that applying procedural statutes such as 18 U.S.C. § 3296, which effectively enlarges the limitations period, does not violate the *ex post facto* clause so long as the statute is passed before the given prosecution is barred. *Stogner v. California*, 539 U.S. 607, 618 (2003); *United States v. Elrod*, 682 F.2d 688, 689 (7th Cir. 1982). Section 3296 was passed in November 2002, at least five months before the earliest bar date for any of Gibson's offenses after accounting for his flight from justice. Application of 18 U.S.C. § 3296 was not *ex post facto*, and counts two, three, and five of the indictment were thus properly reinstated.

### III.  Conclusion

Gibson's original guilty plea was properly vacated along with his sentence in 2004. Through application of 18 U.S.C. §§ 3290 and 3296 to Gibson's flight to Belize and vacated guilty plea, the charges reinstated against him in 2005 for the offenses he committed in 1996 were timely notwithstanding the five-year statute of limitations. The judgment of the district court is AFFIRMED.

A true Copy:

      Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*