In the

# United States Court of Appeals

## For the Seventh Circuit

No. 09-2053

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

DEWAYNE EUGENE WHITE,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Indiana, Hammond Division.
No. 2:08-CR-00003-JTM—**James T. Moody,** *Judge.*

ARGUED JANUARY 15, 2010—DECIDED MARCH 5, 2010

Before WOOD, EVANS, and SYKES, *Circuit Judges.*

EVANS, *Circuit Judge.* Pursuant to a written plea agreement with the government, Dewayne White pled guilty to one count of distributing crack cocaine. After the plea was accepted by the judge, but before sentencing, both parties learned that White's criminal history made him ineligible for a "safety valve" reduction, which, in turn, negated the practical effect of the two other reductions the government had agreed to support. Upon learning

this news, White filed a motion seeking to withdraw his plea on the basis of this "mutual mistake." The government opposed the motion, arguing that the plea should stand because the "mutual mistake" did not affect the essential terms of the agreement and because White knew that the safety valve reduction might not apply. The district judge sympathized with White but denied his request. White now appeals.

Back in December 2007, DEA agent Antonio Smith was working undercover with a confidential informant to make a controlled purchase of crack cocaine. Smith and the informant went to Quintin Lee's residence in Hammond, Indiana, to make the purchase. Lee then telephoned White, who said that he would bring the crack to Lee. White then called his codefendant, Anthony Moton, who agreed to cook up the crack and have it available. White and Moton drove to Lee's house together and parked behind Smith's vehicle. Lee entered Moton's vehicle, and Moton handed him 51.9 grams of crack cocaine. Lee returned to Smith's vehicle, gave Smith the drugs, and obtained $1,500 of buy money from Smith. Lee gave Moton and White $1,300 of the buy money before returning to his house. After Moton and White drove away, the Hammond police performed a traffic stop. White jumped out of the moving car and fled on foot but was eventually apprehended. A digital scale was found in his possession.

Shortly thereafter, White was indicted on one count of knowingly and intentionally distributing fifty or more grams of crack cocaine, in violation of 21 U.S.C. § 841(a)(1).

A few months later, White reached a plea agreement with the government. The plea agreement outlined the various rights White would be waiving by pleading guilty, including the right to request documents relating to his case from the government and the right to appeal[1] his conviction or sentence. The agreement also detailed the government's promises as follows:

> C. The United States of America and I have also entered into the following agreements which are not binding upon the Court, and I understand that if the Court does not follow these agreements I will not be allowed to withdraw my guilty plea;
>
>> a. In recognition of my acceptance of responsibility for my offense conduct, I am entitled to a two point and, if eligible, an additional one point reduction in offense level for acceptance of responsibility; however, the government is not obligated to recommend I receive the acceptance of responsibility adjustment if I deny my involvement in the offense, give conflicting statements of my involvement, or engage in additional criminal conduct including any personal use of controlled substances;
>
>> b. The United States of America and I agree that I am responsible for between 50 and 150 net grams of crack;

---

[1] To the extent that White's mutual mistake argument, if successful, would result in setting aside the plea agreement as a whole, we entertain it despite the appeal waiver. *See United States v. Cieslowski*, 410 F.3d 353, 361-62 (7th Cir. 2005).

    c.  The United States of America and I agree that *if my criminal history qualifies me for safety valve treatment*, and if I satisfy the provision of the safety valve statute pertaining to providing information to the government, then the government will recommend that I am eligible for a two-level reduction under the U.S. Sentencing Guidelines pursuant to sections 2D1.1(b)(9) and 5C1.2(a) and 18 U.S.C. section 3553(f);

    d.  The United States of America and I agree that I was a minor participant in the charged criminal activity and that I am eligible for a two-level reduction under the U.S. Sentencing Guidelines pursuant to section 3B1.2(b);

    e.  The United States of America recommends that the Court should impose a sentence upon me equal to the minimum of the applicable guideline range[.]

(Emphasis added.)

  "Safety valve" treatment was the key to avoiding the 10-year mandatory minimum sentence for White's crime. With the additional reductions for "acceptance of responsibility" and being a "minor participant," White could have received a sentence as low as 46 months. Despite the government's promises, the plea agreement also noted that the possible penalty that could be imposed upon White was a mandatory minimum of 10 years imprisonment and that White's actual sentence would be determined by the court after an investigation by

the U.S. Probation Office and consideration of the U.S. Sentencing Guidelines.

At his plea hearing, the district judge questioned White regarding his understanding of the agreement. When asked when he last reviewed the plea agreement with his lawyer, White replied, "Just before the hearing, sir." He also agreed that the agreement was "[p]retty fresh" in his mind. White responded "Ten years" when asked "What's your understanding of the mandatory minimum term of imprisonment that you're facing for this crime, the lowest point?" The judge and White also specifically discussed the safety valve reduction as follows:

Q. You and the Government have also agreed that the Government will make a nonbinding recommendation at sentencing that you, *if you qualify*, receive the benefit of what's called a safety valve; is that right?

A. Yes, sir.

Q. And *if you do receive that*, as I understand it, that would take him out of the mandatory minimum ten-year term of imprisonment?

[White's counsel]: That's correct, Your Honor.

Q. And you understand that?

A. Yes, sir.

(Emphasis added.) White also acknowledged that the judge was "not going to be able to determine the advisory guideline sentence for [White] until after a presentence

report has been completed." The court eventually accepted White's guilty plea, with both parties apparently believing that he would be eligible for safety valve treatment.[2]

A few months later, the probation office released its presentence report. The report indicated that White had been convicted of two misdemeanors for marijuana possession, giving him two criminal history points. These criminal history points made White ineligible for safety valve treatment, which, in turn, prevented the two additional reductions the government had agreed to support from having any practical effect. As a result, White's sentencing range was 120 to 135 months.

Upon seeing the report, White moved to withdraw his guilty plea. He argued that the parties made a "mutual mistake" that his criminal history score would qualify him for safety valve treatment. White also contended that, because no one explained to him that his failure to qualify for safety valve treatment would also render the other reductions ineffective, he did not enter his plea "knowingly and intelligently." The district judge, however, found that the "mutual mistake" did not amount to a "fair and just reason" to invalidate the guilty plea and

---

[2] Indeed, at the plea hearing, the district judge asked the government's counsel if she had reviewed White's criminal history, and she responded in the affirmative. We are unclear how the mistake was made, but we trust that the government does not go around promising to recommend reductions that it knows will not be available.

that the plea was "knowingly and intelligently" made. The court sentenced White to the mandatory minimum of 120 months imprisonment.

We review the district court's denial of White's motion to withdraw his guilty plea for an abuse of discretion. *United States v. Silva*, 122 F.3d 412, 414-15 (7th Cir. 1997). After a guilty plea is accepted but before sentencing, a defendant may withdraw his plea upon showing a "fair and just reason" for doing so. Fed. R. Crim. P. 11(d)(2)(B). But if (as here) the district court conducted a thorough Rule 11 colloquy, the defendant seeking withdrawal faces an "uphill battle." *United States v. Bennett*, 332 F.3d 1094, 1099 (7th Cir. 2003).

Because plea agreements are governed by ordinary contract principles, a theory of mutual mistake may provide a basis for invalidating an agreement. *United States v. Barnes*, 83 F.3d 934, 938 (7th Cir. 1996). To provide such a basis, however, the mutual mistake must affect the "essential parameters" of the guilty plea, such as "[t]he nature of the charge to which the defendant pleads, the factual basis for the plea and the limits of the district court's sentencing authority . . . ." *Id.*; *see also Cieslowski*, 410 F.3d at 362 ("[T]he mistake of both parties must go to 'a basic assumption on which the contract was made [which] has a material effect on the agreed exchange of performances.'") (citing Restatement Second of Contracts § 152(1)). Critically, "[t]he precise nature of the punishment that will be imposed after a plea is effected is not always an essential term of the plea agreement," although it can be, if "the guilty plea

is exchanged for the imposition of a specific sentence . . . ." *Barnes*, 83 F.3d at 938; *see* Fed. R. Crim. P. 11(c)(1)(C).

The mutual mistake here led both parties to believe that White would be eligible for safety valve treatment and, as a result, a sentence below the statutory minimum could be imposed. This incorrect estimation does not affect the essential terms of White's plea, however, because it was not exchanged for the imposition of a specific sentence. Rather, the essential parameters of the agreement were that White would plead guilty to the one count, give up his right to request records from the government and his right to appeal his sentence, and receive favorable, nonbinding recommendations from the government, including that the court impose a sentence at "the minimum of the applicable guideline range." White does not argue that there was a mutual mistake about (or breach of) these terms.[3]

The mutual mistake also did not affect the essential parameters of the plea because both the plea agreement and the district court specifically addressed the contingency regarding safety valve treatment. In the plea agreement, White agreed that the government would recom-

---

[3] White does argue that there was a failure of consideration because, "while the government received a mother lode of benefits by virtue of its agreement with White, White received absolutely nothing by virtue of his agreement with the government." As the district court found, however, the government did not promise a specific result, and White does not contend that the government failed to carry out its promises.

mend that he was eligible for a two-level reduction "*if my criminal history qualifies me for safety valve treatment . . . .*" And during the plea hearing, the district judge asked White if it was correct that "the Government will make a nonbinding recommendation at sentencing that you, *if you qualify*, receive the benefit of what's called a safety valve . . . ?" and White answered, "Yes, sir." Thus, the mistake was not about an essential term of the agreement but rather about the possible sentence, which generally does not support the withdrawal of a guilty plea. *See United States v. Bowlin*, 534 F.3d 654, 660 (7th Cir. 2008) ("We have repeatedly held that the fact that a defendant underestimated his sentence when entering his plea is not a fair and just reason to permit him to withdraw that guilty plea.") (internal quotation marks omitted).

White also argues that, because he was not specifically warned that ineligibility for safety valve treatment would render the government's other recommendations ineffective, his plea was not "knowingly, voluntarily, and intelligently" made. The district court found that the record contradicted White's assertion that he was unaware of the consequences of his plea. We agree.

A defendant may withdraw his plea if it was not entered into knowingly, voluntarily, and intelligently "with sufficient awareness of the relevant circumstances and likely consequences." *See Bradshaw v. Stumpf*, 545 U.S. 175, 182-83 (2005); *United States v. Wallace*, 276 F.3d 360, 366 (7th Cir. 2002). Voluntary responses made by a defendant under oath before an examining judge, however, are

binding. *United States v. Ellison*, 835 F.2d 687, 693 (7th Cir. 1987). Accordingly, a guilty plea after a Rule 11 colloquy enjoys "a presumption of verity." *Bennett*, 332 F.3d at 1099.

Here, the plea agreement specifically stated that the government would recommend a two-level reduction *if* White was eligible for safety valve treatment, which depended on his criminal history. The agreement further noted that the possible penalty that could be imposed was a mandatory minimum of 10 years imprisonment and that the actual sentence would be determined by the court after an investigation by the probation office and consideration of the sentencing guidelines. The judge followed up on these agreements at the plea hearing, where White specifically acknowledged that (1) the mandatory minimum term was 10 years; (2) *if* he qualified, he could receive safety valve treatment, which was the key to avoiding the mandatory minimum; and (3) the judge could not determine the applicable advisory guideline sentence until after the presentence report was completed. Of course, the warnings could have been more specific. But White cites no case law to support that, without a more thorough warning, his plea was not "knowingly, voluntarily, and intelligently" made. *Cf. United States v. Knorr*, 942 F.2d 1217, 1220 (7th Cir. 1991) ("[T]he judge is not required to, and often cannot, at the time the plea is tendered, inform the defendant of the effects the application of the Sentencing Guidelines will have on the sentence.").

Like the district court, we too sympathize with White. But had he been allowed to withdraw his plea, a subse-

quent guilty verdict by a jury looks here like it would have been a foregone conclusion. And then he might have received a sentence of even more than 10 years. Because the agreement did not promise a specific sentence, and the record shows that White knew the possible consequences of his plea, the district judge did not abuse his discretion in denying White's motion. For these reasons, since we reject White's attempt to set aside the plea agreement, the appeal waiver stands and we must dismiss his appeal for want of jurisdiction.

APPEAL DISMISSED.