**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois  60604**

Argued September 15, 2010
Decided November 24, 2010

**Before**

DANIEL A. MANION,  *Circuit Judge*

DIANE S. SYKES,  *Circuit Judge*

DAVID F. HAMILTON,  *Circuit Judge*

No. 08-1708

| | |
|---|---|
| UNITED STATES OF AMERICA, | Appeal from the United States District |
| *Plaintiff-Appellee,* | Court for the Southern District of Illinois |
| *v.* | No. 06-30161 |
| EARL LIPPERT, | G. Patrick Murphy, *Judge*. |
| *Defendant-Appellant.* | |

**O R D E R**

Earl Lippert pleaded guilty to leading a large methamphetamine manufacturing conspiracy and was sentenced to the statutory maximum on charges stemming from his role, including life for one count.  The crux of his appeal concerns the judge's assumption that a "notice of enhancement" was filed which affected the statutory maximum penalty for his sentence on two counts.  In fact, no notice was filed and Lippert was not eligible for one. Thus, the judge plainly erred by sentencing Lippert to the incorrect statutory maximum for those two counts. But because we are convinced that Lippert would have been sentenced to the properly calculated statutory maximums, we correct his sentence on appeal rather than remand for further proceedings.

I.

Lippert was a long-time meth user, and at some point he started manufacturing it. This was not a small, personal operation: the pre-sentence report estimated that his operation produced almost five kilograms of meth. Naturally an enterprise this large required workers and supplies.  At least five others worked with Lippert, including his wife who served as a lookout keeping people off their property during his "cooks." Cooks is the colloquial description used for the manufacture of this drug. These cooks called for massive amounts of materials.  While Lippert purchased or traded drugs for some of the raw materials, he stole others.

Lippert had an estranged teenage daughter from a previous relationship, and they re-united at some point during the conspiracy.  Lippert quickly introduced her into his illegal drug enterprise.  He had her accompany him when he went to gather supplies. She went with him to steal batteries and Sudafed packs from stores, helped prepare the materials for the cooks, and even went with him to handle the anhydrous ammonia, which is an essential and highly volatile ingredient for making methamphetamine.

In return for helping, Lippert supplied his daughter with a steady supply of meth. While living with Lippert, she was high most of the time, and Lippert frequently had sex with her.  Making matters worse, one night after Lippert smoked meth with her, she climbed a tree, lost her balance, and fell, leaving her paralyzed from the waist down. Lippert visited her in the hospital, and there he continued to get high with her. At least twice he had sex with her after her injury.

Eventually Lippert and his co-conspirators were indicted.  On the morning of trial and without a plea agreement, Lippert pleaded guilty to all four counts: conspiracy to manufacture meth, distribution of meth to a minor (his daughter), and two counts of manufacturing meth. After pleading guilty but before sentencing, Lippert sent a letter to the district court asking to withdraw his plea. He claimed he didn't want to plead guilty, and that his attorney had not communicated with him before the trial. The  district court wouldn't let Lippert withdraw his plea and a sentencing hearing was held.

At the sentencing hearing, the government called several witnesses who established that Lippert threatened a witness, gave his daughter meth, and had her handle anhydrous ammonia. After hearing from the government, Lippert testified and denied giving his daughter meth or involving her in the operation. The judge did not find Lippert credible. The judge then made findings about Lippert's attempts to influence witnesses and the

danger he exposed his daughter to, including the actual physical handling of the ammonia and the effect meth has had on her life. With those findings, Lippert's properly calculated guideline range was life imprisonment.

The judge then gave an involved statement of reasons for the punishment he was imposing. Much of the statement focused on Lippert involving his daughter in this way of life. The judge pointed out that Lippert was her father and that he was supposed to protect her. Yet, by exposing her to meth, he destroyed her life. The judge was particularly clear that

> getting high with a 14-year-old child on methamphetamine and then having sexual intercourse, that shows . . . the extent [that] drugs have taken over what would be your entire personality. In other words, there is simply no moral compass left. There is nothing. Nothing remains.

With this view of Lippert's character and crime, he made clear the punishment he had in mind:

> You're going to get life. You are going to die in federal prison. You are going to do it because you abused a minor child who in nature had every reason to expect and believe that her dad would protect and nurture her and protect her from the hard world that all children have to grow up in.

The judge then imposed the statutory maximum sentence of life for count one and 480 months for count two. Again, counts three and four present the problem on appeal.

The pre-sentence report stated that a 21 U.S.C. § 851 notice of enhancement was filed. Had one been filed, it would have raised the statutory maximum penalty for counts three and four from 240 months to 360 months. The judge relied on the pre-sentence report and neither defense counsel nor the prosecutor corrected him and let him know that, in fact, no such notice had been filed. Laboring under this mistake, the judge sentenced Lippert to the incorrect statutory maximum of 360 months.

Lippert's trial attorney did not move under Rule 35(a) to correct the sentence; instead, after filing his notice of appeal, he filed two *Anders* briefs, seeking to dismiss the appeal. *See Anders v. California*, 386 U.S. 738 (1967) (allowing appointed counsel to request permission to withdraw when an appeal is frivolous). At that time, we noted that issues remained and eventually discharged the attorney and assigned new counsel. On appeal,

Lippert's current counsel now argues that the illegal sentence for counts three and four requires re-sentencing. Lippert *pro se* also filed a supplemental brief raising three issues: the withdrawal of his guilty plea, the improper use of hearsay evidence at sentencing, and the district court's failure to address the 18 U.S.C. § 3553(a) sentencing factors.

II.

At sentencing, Lippert did not object to the court's finding that his statutory maximum for counts three and four was 360 months. The government argues that this means Lippert has waived the argument for appeal. But waiver requires more than simply failing to object: "Waiver occurs when a criminal defendant intentionally relinquishes a known right." *United States v. Clark*, 535 F.3d 571, 577 (7th Cir. 2008) (quotation omitted). When there is no evidence that the defendant knew about his right to assert a challenge or where, as we have here, there would be no strategic reason not to seek a lower sentence, the challenge is forfeited, not waived. *See, e.g., United States v. Gibson*, 356 F.3d 761, 765 (7th Cir. 2004) (reviewing an illegal sentence under plain error). Thus, we review the matter for plain error and ask four things: whether there was error; whether it was plain; whether it affected Lippert's substantial rights; and whether it seriously impugns the fairness, integrity, or public reputation of the judicial proceedings. *United States v. Anderson*, 604 F.3d 997, 1002 (7th Cir. 2010).

It is rarely, if ever, arguable that an illegal sentence does not constitute plain error. *United States v. Pawlinski*, 374 F.3d 536, 540-41 (7th Cir. 2004). By its very nature, there is an error, it is plain, it affects the defendant's substantial rights, and it impugns the reputation of the judicial proceedings. On these last two points, we have been particularly forthright: "It is a miscarriage of justice to give a person an illegal sentence that increases his punishment, just as it is to convict an innocent person." *United States v. Paladino*, 401 F.3d 471, 483 (7th Cir. 2005). And by allowing an illegal sentence "to stand would impugn the fairness, integrity, and public reputation of the judicial proceedings." *Gibson*, 356 F.3d at 767. Thus, the district court committed plain error by sentencing Lippert beyond the statutory maximum for counts three and four.

When we find plain error in a defendant's sentence, our normal course of action is to retain jurisdiction of the appeal and order a limited remand. *United States v. Macedo*, 406 F.3d 778, 790 (7th Cir. 2005). But in certain limited circumstances, remand is unnecessary. When a sentence violates a statutory right, we "may in a proper case 'correct the sentence rather than remanding the case for the execution of [a] ministerial act.'" *United States v. Melody*, 863 F.2d 499, 506 n.7 (7th Cir. 1988) (quoting *United States v. Mathis*, 579 F.2d 415,

420 (7th Cir. 1978)). This is such a case. It is better simply to correct the error than to remand it for the district court to go through the trouble of another sentencing hearing. Two aspects of Lippert's sentencing assure us that this is the correct course to take. First, at sentencing the judge did not rely on the notice of enhancement or Lippert's previous convictions for anything but establishing the statutory maximum. The judge made no references to Lippert's recidivism, and instead focused his reasoning on Lippert's instant crimes, giving particular attention to the effect they had on his daughter. Second, the judge was intent on giving Lippert the maximum penalty allowed under the law. Indeed, he gave Lippert the statutory maximum for each count and assured him "he was going to die in federal prison." This convinces us that if we chose to remand this case for re-sentencing, Lippert would receive the statutory maximum for each count of 240 months. Thus, we will exercise our discretion and direct that Lippert's sentence be modified on counts 3 and 4 and reduced from 360 months to 240 months for both counts.

III.

Lippert also raises three issues in his supplemental brief. He argues that the judge erred by not allowing him to withdraw his guilty plea, using hearsay evidence at sentencing, and failing to address the 18 U.S.C. § 3553(a) sentencing factors. We address them in reverse order.

Lippert does not challenge the guideline calculation, only the district court's limited discussion of the § 3553(a) factors. Although the judge did not walk through each factor and state how it supported Lippert's sentence, the judge adequately explained his reasons, consistent with § 3553(a), for imposing the sentence he did. That is all we require. *United States v. Dale*, 498 F.3d 604, 611-12 (7th Cir. 2007). The judge does not need to rehearse all the § 3553(a) considerations. *Id.* at 612. And here, Lippert's unspeakable abuse was extremely detrimental if not ruinous to his daughter's life—physically, mentally, and perhaps morally. In this circumstance, the judge need not say more.

Lippert also challenges the district court's reliance on hearsay testimony at sentencing. It is long established that "sentencing courts are allowed to consider hearsay testimony." *United States v. House*, 551 F.3d 694, 698 (7th Cir. 2008). And some of the evidence about Lippert's daughter and her role in the conspiracy was first-hand. Thus, there is no merit to Lippert's argument.

Finally, Lippert argues that the judge erred by not allowing him to withdraw his plea. We review the district court's denial of Lippert's motion to withdraw his guilty plea

for an abuse of discretion. *United States v. White*, 597 F.3d 863, 867 (7th Cir. 2010). After a guilty plea is accepted but before sentencing, a defendant may withdraw his plea upon showing a "fair and just reason" for doing so. Fed. R. Crim. P. 11(d)(2)(B). This includes when the plea was not entered into "voluntarily, knowingly, and intelligently, with sufficient awareness of the relevant circumstances and likely consequences." *Bradshaw v. Stumpf*, 545 U.S. 175, 182 (2005) (quotation omitted).

Lippert argues that he should have been allowed to withdraw his plea because he was pressured into it by his lawyer who assured him that once the jury saw Lippert's daughter testify from a wheelchair, the jury would "put me in hot grease." While the Eighth Amendment prohibits such sentences, the illustrative effect of that statement is not lost on us. Taken in context, the defense counsel expressed his opinion that this was a bad case to take to trial and Lippert's daughter would be a sympathetic and altogether devastating witness against the defense. Lippert agreed and pleaded guilty. The fact that he later re-assessed the decision and now claims that he didn't do it is not a fair and just reason to withdraw his plea. "[C]laims of innocence alone do not mandate permission to withdraw a plea." *United States v. Groll*, 992 F.2d 755, 758 (7th Cir. 1993). Rather, a defendant must substantiate his claims with evidence of his innocence. *Id.* Lippert didn't produce any evidence of his innocence. Therefore, the district court did not abuse its discretion in denying Lippert's motion to withdraw his plea.

IV.

It was plain error to sentence Lippert above the statutory maximum for counts three and four. We direct that Lippert's sentence be modified accordingly: his sentence for counts three and four will be reduced from 360 months to 240 months. Further, his supervised release for counts 2, 3, and 4 will be reduced to five years. In all other respects, the judgment of the district court is AFFIRMED AS MODIFIED.