NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted May 9, 2012
Decided May 9, 2012

**Before**

JOEL M. FLAUM, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 11-2474

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, | Appeal from the United States District Court for the Southern District of Illinois. |
| *v.* | No. 4:07CR40020-002-JPG |
| GLADYS S. WILSON, *Defendant-Appellant*. | J. Phil Gilbert, *Judge*. |

**O R D E R**

Gladys Wilson was charged with participating for more than four years in a conspiracy to distribute crack cocaine in southern Illinois. *See* 21 U.S.C. §§ 846, 841(a)(1). She also was charged with two counts of distributing crack and two counts of distributing powder cocaine. *See id.* § 841(a)(1). She pleaded guilty to all but the conspiracy count. During the plea colloquy, *see* FED. R. CRIM. P. 11(b), Wilson admitted that the distribution counts had involved small sales to an informant totaling roughly three grams of powder cocaine and less than a gram of crack. Yet an uncharged coconspirator, Dawn Tibbets, had told investigators she was present on many occasions when Wilson had "cooked" powder cocaine into crack, and on that basis a probation officer recommended that Wilson's relevant conduct include at least 4.5 *kilograms* of crack. This quantity yielded a base offense level of 38 under the version of the guidelines in effect when Wilson was sentenced in early 2008. *See* U.S.S.G. § 2D1.1(c) (2007). After Tibbets testified at the sentencing hearing, the

district court adopted the probation officer's recommendation, calculated a guidelines imprisonment range of 188 to 235 months, and sentenced Wilson to a total of 200 months.

Wilson filed a notice of appeal,[1] but her newly appointed lawyer has concluded that the appeal is frivolous and seeks to withdraw under *Anders v. California*, 386 U.S. 738 (1967). Wilson opposes counsel's motion. *See* CIR. R. 51(b). We confine our review to the potential issues identified in counsel's facially adequate brief and Wilson's response. *See United States v. Schuh*, 289 F.3d 968, 973–74 (7th Cir. 2002).

Counsel tells us that Wilson does not want her guilty pleas vacated and thus refrains from discussing possible challenges to the voluntary nature of those pleas or the adequacy of the plea colloquy. *See United States v. Knox*, 287 F.3d 667, 671–72 (7th Cir. 2002). But in her Rule 51(b) response, Wilson calls into question the validity of her guilty pleas, and the effectiveness of her former attorney, by asserting that she did not understand before pleading guilty that the drug-quantity calculation might "skyrocket" based on relevant conduct. (She admittedly anticipated being held responsible for 255 grams of crack but says that she never expected the quantity to jump to 4.5 kilograms or more.)

The plea colloquy conducted by the district court substantially complied with Rule 11. The court gave the appropriate admonishments, *see id.* 11(b), and was satisfied that Wilson understood that the statutory maximum for each distribution count was 20 years and that the sentencing guidelines are advisory only. These admonishments were enough to ensure that Wilson's pleas were made knowingly and intelligently. *See United States v. White*, 597 F.3d 863, 868 (7th Cir. 2010); *United States v. Bowlin*, 534 F.3d 654, 660 (7th Cir. 2008). To establish ineffective assistance of counsel, Wilson would have to demonstrate that her lawyer's explanation about relevant conduct was deficient, and also a reasonable probability that she would have insisted on going to trial absent her attorney's misstep. *See Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *Koons v. United States*, 639 F.3d 348, 351 (7th Cir. 2011). But in the record before us there is no evidence that Wilson was uninformed or misinformed about relevant conduct (an assertion made for the first time in a submission to this court is not evidence). Nor does Wilson say that she would have gone to trial if warned

---

[1]Wilson was sentenced in April 2008. She filed a notice of appeal within the allotted time, *see* FED. R. APP. P. 4(b)(1)(A), but voluntarily dismissed that appeal after a misunderstanding with the lawyer who was representing her at the time. On Wilson's motion, *see* 28 U.S.C. § 2255, the district court later vacated and reentered the criminal judgment, allowing Wilson to file this appeal. *Wilson v. United States*, 2011 WL 2678921 (S.D. Ill. June 30, 2011). Wilson's sentence is governed by the version of the guidelines in effect in April 2008. *See United States v. McDuffy*, 90 F.3d 233, 235 n.1 (7th Cir. 1996).

about relevant conduct or even that her attorney misrepresented her potential sentence before she pleaded guilty. *See Hutchings v. United States*, 618 F.3d 693, 697 (7th Cir. 2010). Moreover, claims of ineffective assistance are best raised through a collateral proceeding where a complete record can be developed. *Massaro v. United States*, 538 U.S. 500, 504–05 (2003); *United States v. Isom*, 635 F.3d 904, 909 (7th Cir. 2011).

Wilson and counsel also address whether Wilson might raise an appellate claim about the reliability of Dawn Tibbets, whose proffers to investigators and testimony about witnessing Wilson cooking powder cocaine into crack cocaine are the only evidence linking Wilson to the substantial amount of crack found by the district judge. (A local police captain also testified that he had interviewed a drug user who saw Wilson and her accomplices cook two kilograms of powder cocaine into crack, but that amount of drugs would not support the offense level Wilson received.) According to Tibbets, she first got involved with Wilson's drug operation when she transported about four kilograms of powder cocaine from East St. Louis to Mount Vernon, Illinois, at the request of one of Wilson's accomplices. She delivered this cocaine to Wilson, she testified, who cooked it into crack at a "safe house." Tibbets said that she then continued to transport drugs for Wilson and watched her, on around 12 occasions, cook brick-size amounts of powder cocaine into rocks of crack "three or four times bigger than a golf ball." Tibbets ended her association with Wilson after a search warrant was executed at the safe house.

Tibbets' information was not always consistent, but the district court thoroughly assessed her credibility. The court noted that she spoke with a slur but cited testimony that this trait was the result of a past car accident and her use of prescription painkillers. The court also noted that her testimony was corroborated in part by the witness who linked her to two kilograms of powder cocaine. The court suggested that Tibbets' account of her first drug run to East St. Louis seemed "unbelievable" but credited her story because "there's nothing logical about the drug trade" and Tibbets had no apparent incentive to make it up. The court ultimately found Tibbets credible and, even after cautiously shaving a third from the total she had estimated, calculated an amount of at least 4.5 kilograms. Credibility findings are "especially within the province of the district court and 'can virtually never be clear error.'" *See United States v. Longstreet*, 669 F.3d 834, 837 (7th Cir. 2012) (quoting *United States v. Clark*, 538 F.3d 803, 813 (7th Cir. 2008)). Thus, as counsel asserts, it would be frivolous to challenge the court's finding here.

Wilson also mentions that the district court seemed to conflate powder and crack cocaine by remarking that, based on Tibbets' testimony, Wilson may have been responsible for "a total of about 9 kilograms of powder cocaine." But the rest of the record shows that the court misspoke when it mentioned *powder* cocaine. Only moments before, the court had acknowledged the probation officer's attribution of 8.75 kilograms of *crack* to Wilson, and

the court later specifically found Wilson responsible for "at least 4.5 kilograms of cocaine base in the form of crack cocaine."

Wilson further argues that the drug "cooks" witnessed by Tibbets should not have counted as relevant conduct because, in her view, they were not part of the same course of conduct or common scheme or plan as the substantive counts of distribution. *See* U.S.S.G. § 1B1.3(a)(2). But we would uphold the district court's conclusion that Wilson's actions, as described by Tibbets, were part of the same scheme as the offenses of conviction. As the probation officer noted, her actions all involved the same accomplices, the same drug, and the same modus operandi. *See id.* § 1B1.3 cmt. n.9(A); *United States v. Panaigua-Verdugo*, 537 F.3d 722, 726–27 (7th Cir. 2008); *United States v. Wilson*, 502 F.3d 718, 723 (7th Cir. 2007); *United States v. Delatorre*, 406 F.3d 863, 866–67 (7th Cir. 2005).

Wilson also addresses whether remand might be warranted because she received criminal-history points for two state cases that, she says, were "dismissed" shortly after she was sentenced in this case. But the presentence report shows that, although Wilson had not been sentenced on the two state charges at the time of her federal sentencing, her guilt had been established in each prosecution (one by guilty plea, the other by bench trial), so these charges properly counted in calculating her criminal-history score under the sentencing guidelines. *See* U.S.S.G. § 4A1.2(a)(4). It is unclear exactly what Wilson means when she says that these cases were "dismissed," but she might be describing dismissals under 730 ILCS 5/5-6-3.1(e), which allows criminal charges to be dismissed, even after guilt has been established, if a defendant successfully completes a period of supervision. *See United States v. Jones*, 448 F.3d 958, 959 (7th Cir. 2006). These types of dismissals, however, still incur criminal-history points under the sentencing guidelines. *See* U.S.S.G. § 4A1.2 cmt. n.10; *Jones*, 448 F.3d at 959.

Finally, counsel addresses whether Wilson could challenge the reasonableness of her overall prison sentence. The term is within the guidelines range and thus presumptively reasonable. *See Rita v. United States*, 551 U.S. 338, 347 (2007); *United States v. Pillado*, 656 F.3d 754, 772 (7th Cir. 2011). Counsel identifies no basis to set aside that presumption, nor have we. Looking to 18 U.S.C. § 3553(a), the district court concluded that a sentence in the middle of the guidelines range was warranted based on Wilson's personal characteristics and the need for deterrence.

Counsel's motion to withdraw is GRANTED, and the appeal is DISMISSED.