In the

# United States Court of Appeals

## For the Seventh Circuit

No. 09-1612

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ALAN D. ANDERSON,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 05-CR-240—**Rudolph T. Randa**, *Judge.*

ARGUED JANUARY 14, 2010—DECIDED MAY 13, 2010

Before FLAUM, ROVNER, and HAMILTON, *Circuit Judges.*

FLAUM, *Circuit Judge.* Defendant-appellant Anderson argues that the government breached a plea agreement when it failed to move for a reduction to defendant's offense level pursuant to United States Sentencing Guidelines § 3E1.1(b). In the absence of a formal motion by the United States, the district court could not apply the reduction. The government concedes breach, but because appellant did not object at sentencing, we review the judgment under a plain-error standard. Anderson

does not demonstrate that he was prejudiced by the violation and we find no miscarriage of justice. Any procedural flaws in the sentencing hearing are harmless and we affirm.

## I. Background

Anderson was indicted in the fall of 2005 as part of a large-scale racketeering case focusing on the Latin Kings street gang. On January 30 of that year, he shot Efrin Delgado with a sawed-off shotgun from close range after the two got into an argument over a woman while at a bar. Delgado survived but suffered permanent injuries. Anderson handed the shotgun off to an associate, Rogelio Guarnero. Authorities recovered the weapon at Guarnero's house the next day, pursuant to a valid search warrant. Anderson was charged with conspiracy to commit racketeering, conspiracy to possess with intent to distribute large quantities of crack and powder cocaine, possession of an unregistered shotgun with a barrel length of less than 18 inches (Count Twenty-Four), and conspiracy to distribute cocaine. On Nov. 5, 2008, after three years of pretrial proceedings, Anderson and co-defendant Martin Martinez proceeded to trial before a jury.

Two weeks before trial, the government offered Anderson a plea agreement that stipulated, inter alia:

> The government agrees to recommend a two-level decrease for acceptance of responsibility as authorized by Sentencing Guidelines Manual § 3E1.1(a), but

only if the defendant exhibits conduct consistent with the acceptance of responsibility. In addition, if the court determines at the time of sentencing that the defendant is entitled to the two-level reduction under § 3E1.1(a), the government agrees to make a motion recommending an additional one-level decrease as authorized by Sentencing Guidelines Manual § 3E1.1(b) because the defendant timely notified authorities of his intention to enter a plea of guilty.

Section 3E1.1 reads:

(a) If the defendant clearly demonstrates acceptance of responsibility for his offense, decrease the offense level by 2 levels.

(b) If the defendant qualifies for a decrease under subsection (a), the offense level determined prior to the operation of subsection (a) is level 16 or greater, and upon motion of the government stating that the defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently, decrease the offense level by 1 additional level.

Comment 6 to § 3E1.1 states, in relevant part:

The timeliness of the defendant's acceptance of responsibility is a consideration under both subsections, and is context specific. In general, the conduct qualifying for a decrease in offense level under sub-

section (b) will occur particularly early in the case. For example, to qualify under subsection (b), the defendant must have notified authorities of his intention to enter a plea of guilty at a sufficiently early point in the process so that the government may avoid preparing for trial and the court may schedule its calendar efficiently.

On the theory that the government "is in the best position to determine whether the defendant has assisted authorities in a manner that avoids preparing for trial," the Guidelines make the § 3E1.1(b) reduction available only upon a formal government motion.

After three days of trial, Anderson came to court with a signed copy of the plea agreement in which he pleaded guilty to Count 24 (possessing an unregistered, sawed-off shotgun). The PSR recommended that appellant receive a two-level § 3E1.1(a) reduction, but not the additional third point for prompt notification under § 3E1.1(b). Judge Randa began the hearing by remarking that he "has read the [Presentence Investigation Report's ("PSR")]" and was "prepared to proceed." At that point, Anderson stated he and his lawyer "went over [the PSR] together" and that he had no objections to the PSR beyond a minor factual correction. Later, appellant's counsel contested his involvement in the shooting and objected to the PSR's recommendation of a cross-reference from the firearm guideline (§ 2K2.1) to the attempted murder guideline (§ 2A2.1(a)(2)), but said nothing about acceptance of responsibility credits. During a lengthy allocution, Anderson also left the topic of § 3E1.1

untouched. In fact, he stated "I understand that I went to trial and took a plea in the middle of trial."

The PSR identified a base offense level of 27 under the attempted murder guidelines. Regarding the § 3E1.1(b) reduction, the report stated:

> According to the plea agreement, the government intends to file a motion for an additional one level [sic] reduction. However, Mr. Anderson did not timely notify authorities of his intention to enter a plea of guilty. Mr. Anderson appeared before the Court for jury trial and then entered a plea of guilty. Therefore, an additional one level [sic] decrease is not given.

Given Anderson's criminal history, the report calculated an applicable guideline sentence of 121 to 151 months coupled with supervised release of 2 to 3 years. The statutory maximum punishment for possession of a sawed-off shotgun, however, was 120 months' imprisonment. During the hearing, the court engaged Anderson in a lengthy discussion about appellant's family, upbringing, criminal history, motivation for joining a gang, and the immense threat that gang violence posed to communities. Following allocution, Judge Randa continued to view Anderson skeptically, noting that the defendant "seems to think he can do everything better than someone else, including his legal representation." The court thus sentenced Anderson to the maximum 120-month sentence. It also imposed a three-year term of supervised release, stating:

> Now, I have to place you on supervised release, Mr. Anderson. And I'm going to set—obviously set some conditions of supervised release. I'm going to

> waive the fine in this case, because you don't have, as the analysis of your economic circumstances discloses, the ability to pay a fine in this case. Minimum fine is $15,000. Statutory. But you do have to pay the $100 mandatory special assessment, which the Court informed you of at the time of your plea. . . . Now, the Court's disposition again also as to Count 24, supervised release for 3 years.

Judge Randa then went on to explain the conditions of the supervised release and their respective justifications. One of his comments reads as follows: "The presentence report indicates that you were a marijuana user, Mr. Anderson, so the Court—unless the defense objects— is going to recommend that he participate in a drug treatment program." No objection followed.

Anderson puts forward two claims. First, he argues that the district court committed clear error that runs against the interests of justice when it neglected to hold the government to the terms of the plea agreement. Accordingly, he asks that we remand the case to the district court for rehearing on the issue. Second, he asserts that the district court did not adequately consider the factors specified in 18 U.S.C. § 3553(a) prior to sentencing defendant to three years of supervised release.

## II.  Discussion

The threshold issue in Anderson's appeal of his sentence is whether he merely forfeited or fully waived his right to object to the guideline calculation. His counsel

acknowledges at least the former by stating that "Mr. Anderson did not raise the government's obligation to move for the third point for acceptance of responsibility in the district court and has forfeited it for review." If we accept this argument, we would review Judge Randa's decision for plain error because Anderson never presented his claim to the district court. *See* Fed. R. Crim. P. 52(b); *Puckett v. United States*, 129 S. Ct. 1423, 1429 (2009); *United States v. Huffstatler*, 571 F.3d 620, 622 (7th Cir. 2009); *United States v. Ortiz*, 431 F.3d 1035, 1038 (7th Cir. 2005).

On the other hand, the government asserts that Anderson affirmatively waived his right to appellate review of the third-point reduction by endorsing the PSR. That is, the United States attempts to portray the lack of objections to the government's compliance with the plea agreement as a strategic decision by Anderson. From this perspective, appellant stayed quiet because he sought to divert the court's attention from whether any § 3E1.1 adjustment for acceptance of responsibility was appropriate in his case at all. *See United States v. Jones*, 52 F.3d 697, 701 (7th Cir. 1995) (holding that a sentencing judge may look for "genuine remorse" or complete acceptance of responsibility before awarding a reduction under § 3E1.1(a)).

To distinguish between forfeiture and waiver, we examine a party's state of mind at the time that an objection could have been raised. Forfeiture takes place when counsel or a defendant negligently bypasses a valid argument. *See United States v. Olano*, 507 U.S. 725,

733 (1993); *United States v. Cooper*, 243 F.3d 411, 416 (7th Cir. 2001). By contrast, waiver requires a calculated choice to stay silent on a particular matter. *Olano*, 507 U.S. at 733 ("[W]aiver is the 'intentional relinquishment or abandonment of a known right.'") (citations omitted); *United States v. Jaimes-Jaimes*, 406 F.3d 845, 848 (7th Cir. 2005) ("There may be sound strategic reasons why a criminal defendant will elect to pursue one sentencing argument while also choosing to forego another, and when the defendant selects as a matter of strategy, he also waives those arguments he decided not to present."); *see also United States v. Jacques*, 345 F.3d 960, 962 (7th Cir. 2003). "Unlike forfeiture, waiver is not subject to plain error analysis, because the waiver extinguishes any error." *United States v. Redding*, 104 F.3d 96, 99 (7th Cir. 1996).

We have previously held that defense counsel's oral acceptance of the terms of a PSR without objections constitutes a waiver of the defendant's rights to subsequently challenge the sentence. *United States v. Brodie*, 507 F.3d 527, 531-32 (7th Cir. 2007); *United States v. Staples*, 202 F.3d 992, 995 (7th Cir. 2000). As we explained in our decision in *Jaimes-Jaimes*, however, there is no rigid rule for finding waiver in acquiescence. Instead, we evaluate each omission individually. *Jaimes-Jaimes*, 406 F.3d at 848. Where the government cannot proffer any strategic justification for a decision, we can assume forfeiture. *Brodie*, 507 F.3d at 532.

Under the aforementioned precedent, this case is a close one. Anderson may have well tried to salvage a generally favorable plea agreement to the greatest

extent possible after seeing a conviction looming on the horizon. An objection on the grounds that the government failed to move for a promised § 3E3.1(b) reduction would not have advanced Anderson's cause by much because by its terms, the credit applies only to defendants who plead guilty early enough that "the government may avoid preparing for trial." We need not identify the exact point in time at which an individual becomes ineligible for § 3E3.1(b), but we have no difficulty concluding that Anderson, who brought the signed plea agreement in on the fourth day of trial, was too late. Appellant's counsel may have anticipated that the district court would also reach this reasonable conclusion and decided that the argument was not worth advancing. Indeed, she and Anderson could have thought that asking for the third-level reduction would antagonize the sentencing judge and undermine any further plea for leniency. Such a strategic choice is the epitome of waiver, but the record before us requires us to draw several speculative inferences to reach this conclusion.

We need not do so to resolve this case. Waiver principles must be construed liberally in favor of the defendant. *United States v. Sumner*, 265 F.3d 532, 539 (7th Cir. 2001). The only way Anderson could have moved the guidelines below the ten-year ceiling set out in 26 U.S.C. § 5871 was to ask for all three offense level credits. If failure to do so amounted to a deficiency on behalf of his counsel, our usual presumption that attorneys act reasonably would necessitate a finding of forfeiture. *See Jaimes-Jaimes*, 406 F.3d at 848 ("[A]n argument should be

deemed forfeited rather than waived if finding waiver from an ambiguous record would compel the conclusion that counsel necessarily would have been deficient to advise the defendant not to object.") (citing *United States v. Richardson*, 238 F.3d 837, 841 (7th Cir. 2001)); *United States v. Farr*, 297 F.3d 651, 658 (7th Cir. 2002) (stating that, in the Sixth Amendment context, "[w]e presume that counsel is effective, and a defendant bears a heavy burden in making out a winning claim based on ineffective assistance of counsel."). Yet even under plain error review, which would require a most generous reading of the record, the United States would prevail.

Applying that standard, we would reverse the determination of a district court only when we find: (1) an error or defect (2) that is clear or obvious (3) affecting the defendant's substantial rights (4) and seriously impugning the fairness, integrity, or public reputation of judicial proceedings. *Olano*, 507 U.S. at 736. The parties agree that the government's failure to move for a § 3E1.1(b) reduction satisfies elements 1 and 2. Anderson claims that his case fulfills condition 3 as well, since the extra point reduction could have changed his guideline range from 121 to 151 months to 110 to 137 months. Therefore, but for the breach, Judge Randa could have sentenced Anderson to a term shorter than the statutory maximum 120 months while remaining within the guideline range. Such a possibility is not enough to satisfy the "remarkably demanding" plain error test. *United States v. Salazar*, 453 F.3d 911, 913 (7th Cir. 2006). "In the context of an arguably breached plea agreement, [defendant-appellant] must show that but for the breach, his

sentence would have been different." *Id.*; *see also United States v. D'Iguillont*, 979 F.2d 612, 614 (7th Cir. 1992). He has not done so here, where the district court consciously imposed the maximum punishment permitted by law on an individual it viewed as recalcitrant. Moreover, Anderson cannot demonstrate that he suffered from a manifest miscarriage of justice necessary for relief. *Cf. United States v. White*, 903 F.2d 457, 466-67 (7th Cir. 1990). The alleged deficiency was the government's failure to move for a reduction that, as we explained above, was inapplicable on its face. Since we are confident that Judge Randa would have exercised his discretion to avoid awarding Anderson the benefits of § 3E1.1(b), we find no plain error in the district court's sentencing decision.

Likewise, we find no merit in Anderson's claim that the district court failed to properly consider the factors listed in 18 U.S.C. § 3553(a) when sentencing him to three years of supervised release. Appellant concedes that Judge Randa's extensive discussion of gang violence and Anderson's background covered all necessary bases for the 120-month sentence. But he argues that the court did not make the requisite findings when he moved on to the supervised release stage of the sentence. Anderson takes particular issue with the fact that Judge Randa never recited that guideline range for supervised release during the hearing. That is, according to the appellant, the shift in topics demanded a separate comprehensive analysis.

We have never required such repetition from the district court. When reviewing a sentence, we first check the proceedings under an abuse-of-discretion standard to ensure that "the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range." *Gall v. United States*, 552 U.S. 38, 51 (2007). We then examine the sentence for reasonableness. *United States v. Abbas*, 560 F.3d 660, 666 (7th Cir. 2009). Anderson, however, never objected to the district court's imposition of three years of supervised release. Accordingly, we again apply a plain error test and find Judge Randa's discussion adequate.

To satisfy procedural justice requirements as set out in *Gall*, a sentencing judge "must correctly understand what the Guidelines recommend." *United States v. Alldredge*, 551 F.3d 645, 647 (7th Cir. 2008). Morever, even where a district court makes a mistake, we will affirm a reasonable sentence if the government proves that it would not change on remand. *United States v. Abbas*, 560 F.3d 660, 667 (7th Cir. 2009); *United States v. Jackson*, 549 F.3d 1115, 1118 (7th Cir. 2008); *United States v. White*, 519 F.3d 342, 349 (7th Cir. 2008). Thus, while our precedent implores a judge to announce the suggested guidelines term of supervised release at the beginning of his § 3553(a) analysis to show that he understands the recommendation, *United States v. Gibbs*, 578 F.3d 694, 695 (7th Cir.

2009), any deviation from that approach here is harmless. *United States v. Anderson*, 517 F.3d 953, 965 (7th Cir. 2008) ("An error is harmless if it 'did not affect the district court's selection of the sentence imposed.'"). In any event, a party who is concerned about the length or conditions of the supervised release portion of the sentence should bring those concerns to the court's attention before the court imposes the sentence.

In *Gibbs*, we remanded the case for resentencing because the district judge gave no indication that she was aware that the Guidelines recommended five years of supervised release when she imposed twice that term on appellant. Accordingly, we were "unable to satisfy ourselves that the district court correctly calculated the advisory Guideline range." 578 F.3d at 685-96. Here, by contrast, the district court nailed the recommended period of supervised release on the head. Together with Judge Randa's express mentions of the PSR in the earlier part of the hearing, this fact makes it inappropriate for us to conclude that the district court did not "understand" the guideline range. *Cf. Gibbs*, 578 F.3d at 695 ("The Government speculates that the district court knew that the Guideline range was five years, but it provides no evidence to support this assertion; at oral argument, the Government could not identify a single statement by the court reflecting its knowledge that the advisory range was five years. Nowhere in the record does it even establish that the district court adopted the Guideline range in the presentencing report. Under the circumstances, we are unable to satisfy ourselves that the district court correctly calculated the advisory Guideline

range."). Certainly, an explicit announcement of the guidelines recommendation would have simplified the issue before us. In this case, however, where a judge has diligently assessed other parts of the PSR and decided to impose a within-guidelines term of supervised release, silence did not affect appellant's substantive rights.

## III. Conclusion

For the foregoing reasons, we AFFIRM the district court's judgment.