NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit
Chicago, Illinois 60604**

Argued June 2, 2011
Decided August 16, 2011

*Before*

WILLIAM J. BAUER, *Circuit Judge*

RICHARD A. POSNER, *Circuit Judge*

DANIEL A. MANION, *Circuit Judge*

| | |
|---|---|
| No. 10-2650 | Appeal from the United States District Court for the Central District of Illinois, Urbana |
| United States of America, | |
| *Plaintiff-Appellee*, | No. 08 CR 20068 |
| *v.* | **Michael P. McCuskey**, *Judge*. |
| Latonya M. Clavielle, | |
| *Defendant-Appellant*. | |

**O R D E R**

A jury convicted Latonya Clavielle of several counts of mail fraud and aggravated identity theft. The district court then sentenced her to a total term of 61 months' imprisonment and $42,169.05 in restitution, which was the total amount of credit card debt incurred by Clavielle. Clavielle appeals, challenging her sentence and restitution on the grounds that the loss amount was incorrectly calculated. We affirm.

I.

A fraud investigator for a credit card company became suspicious after noticing multiple credit card applications coming from the same two mailing addresses. An investigation revealed that Clavielle was obtaining credit cards by falsifying personal records and using variations of the names, Social Security numbers, and birth dates of her three minor children and the two minor children of her boyfriend. In total, Clavielle submitted 162 credit card applications; 31 were accepted by four credit card companies. She was charged with mail fraud in violation of 18 U.S.C. § 1341 and aggravated identity theft in violation of 18 U.S.C. § 1028A, and was found guilty following a jury trial.

Prior to sentencing, the government produced to the probation office the statements for all 31 credit cards; the total amount of debt from all the cards was $42,169.05. Based on these statements, the probation office recommended in the presentence report a six-level increase in the sentencing guidelines that applies to losses of more than $30,000 but not greater than $70,000. *See* U.S.S.G. § 2B1.1(b)(1)(D). This resulted in an advisory guidelines range of 30 to 37 months' imprisonment for the mail fraud charges.

During the sentencing hearing, both Clavielle's counsel and Clavielle herself explicitly stated that they had no objections to the probation office's presentence report. The district court then sentenced Clavielle to 37 months' imprisonment on the counts of mail fraud, with an additional 24 months on the counts of aggravated identity theft to be served consecutively, for a total of 61 months' imprisonment. The district court also ordered restitution in the amount of $42,169.05.

II.

On appeal, Clavielle argues for the first time that the loss amount was incorrectly calculated. Clavielle contends that the loss amount should have included only the credit card debt incurred by Clavielle, and not the additional interest and fees. On this basis, Clavielle challenges both her sentence and her restitution.

As a preliminary matter, the government argues that Clavielle intentionally waived a challenge to the loss calculation when she and her counsel explicitly stated that they had no objections to the presentence report. "Waiver occurs when a defendant intentionally relinquishes a known right." *United States v. Staples*, 202 F.3d 992, 995 (7th Cir. 2000); *see also United States v. Anderson*, 604 F.3d 997, 1001 (7th Cir. 2010) ("[W]aiver requires a calculated choice to stay silent on a particular matter."). Clavielle argues that instead of a waiver, this

is an instance of forfeiture which is reviewed for plain error. *See Anderson*, 604 F.3d at 1001. We need not resolve this question, though, because even if Clavielle merely forfeited her argument, she cannot establish plain error, i.e., a clear error that affected her substantial rights. *See United States v. Olano*, 507 U.S. 725, 733-34 (1993).

Initially we note that Clavielle is correct that the district court improperly calculated the loss for purposes of sentencing: the application note to § 2B1.1 of the Sentencing Guidelines says that "loss" should not include "[i]nterest of any kind, finance charges, late fees, penalties, amounts based on an agreed-upon return or rate of return, or other similar costs." U.S.S.G. § 2B1.1, cmt. n.3(D)(i). So in Clavielle's case, for purposes of sentencing, the loss should not have included the interest and fees of the 31 credit cards. But even if the loss was properly calculated, it would not have made any difference to her sentencing guidelines because the actual loss without interest and fees was not less than $30,000. Subtracting the interest and fees from all but four credit cards gives a loss amount of $32,504.02. For the remaining four credit cards, unfortunately, the record does not indicate the interest and fees. But the total charges on those four remaining credit cards is only $2,932.14, and it is not likely that $2,504.02 of this total corresponds to interest and fees—which is what would be necessary for the loss amount for all 31 credit cards to fall below $30,000. Thus, the loss would have remained greater than $30,000 even if the loss was properly calculated, and the six-level increase would still apply to Clavielle's guidelines range. Because the guidelines calculation was correct, this cannot constitute plain error.

Clavielle also argues that the loss calculation affected the substantive reasonableness of the sentence. A sentence within the guidelines, as is the case here, is presumed reasonable. *See United States v. Cunningham*, 429 F.3d 673, 675 (7th Cir. 2005). During the sentencing hearing, the judge appropriately weighed the various factors set forth in 18 U.S.C. § 3553(a) and articulated reasons for the sentence, including the seriousness of the offense, the adequacy of deterrence, and the need to protect the public from further crimes. There is nothing to indicate that the mistake in loss calculation affected the judge's sentence. Accordingly, the loss calculation was not a clear error that affected Clavielle's substantial rights in her sentencing.

Finally, Clavielle appeals her restitution amount of $42,169.05 because it was based on the same loss calculation. Again, since Clavielle did not object to the restitution at sentencing, at best, our review is for plain error. *Anderson*, 604 F.3d at 1001. Because she committed a crime of fraud, Clavielle is subject to the Mandatory Victim Restitution Act, 18 U.S.C. § 3663A, and she must make restitution. Under the Act and its predecessor, the

Victim and Witness Protection Act, prejudgment interest can be included when calculating restitution.  *See United States v. Qurashi*, 634 F.3d 699, 703 (2d Cir. 2011); *United States v. Shepard*, 269 F.3d 884, 886 (7th Cir. 2001).  Also, the purpose of restitution is "to make the victim whole."  *United States v. Venturella*, 585 F.3d 1013, 1020 (7th Cir. 2009).  Here, the government presented evidence of credit card debt incurred by Clavielle, including interest and fees.  Clavielle did not object to this evidence.  Since the victims are entitled to be made whole, it was not error for the district court to order restitution in the total amount of debt.

We AFFIRM.