# IMPORTANT NOTICE
# NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

RENDERED: MAY 5, 2016
NOT TO BE PUBLISHED

# Supreme Court of Kentucky



2014-SC-000506-MR

DATE 5-26-16 Emily Grout, D.C.

DEDRICK A. JACKSON      APPELLANT

ON APPEAL FROM SHELBY CIRCUIT COURT
V.      HONORABLE CHARLES R. HICKMAN, JUDGE
NO. 11-CR-00192-001

COMMONWEALTH OF KENTUCKY      APPELLEE

## MEMORANDUM OPINION OF THE COURT

## AFFIRMING IN PART, REVERSING IN PART, AND REMANDING

The Appellant, Dedrick Jackson, was convicted of first-degree trafficking in a controlled substance, second offense, and was sentenced to twenty years in prison. On appeal, he claims the following: (1) that the trial court erred in admitting hearsay testimony about anonymous tips to police alleging that Jackson was dealing drugs out of his apartment; (2) that the admission of testimony about Kentucky All-Schedule Prescription Electronic Reporting (KASPER) results was palpable error; and (3) that the trial court's penalty-phase procedures erroneously required the jury to recommend a sentence on his trafficking conviction prior to the truth-in-sentencing evidentiary hearing. We affirm Jackson's conviction but hold that the penalty-phase error requires reversal of Jackson's sentence and remand for a new sentencing hearing.

# I. Background

In 2011, police received several anonymous tips that Dedrick Jackson and his girlfriend, Anna Roberts, were selling drugs out of their apartment. They set up surveillance of the apartment, during which officers observed activity that, in their experience, was characteristic of drug trafficking, including heavy visitor traffic to the apartment, brief visits, and suspicious interactions between Jackson and visitors outside the apartment.

Based on the information provided by the anonymous tipsters and the officers' own observations, police obtained a warrant to search the apartment. Police executed the warrant and found almost 20 grams of cocaine, two hydrocodone pills, and about $2,000 in cash. Jackson made statements to police during the search admitting that the contraband was his. Police apparently found no evidence of personal drug use by the couple.

Jackson was arrested and later interviewed by police. During his interview, he admitted to having had a bag containing ten grams of cocaine on his person and about one gram of cocaine in his bedroom at the time of the search. (The lab technician who tested the evidence testified that the bag found on his person actually contained 17.13 grams of cocaine while the bag found in the bedroom contained 1.68 grams of cocaine.) He admitted that the drugs and money were his and that he had sold cocaine, purportedly outside the apartment only, not inside it. He denied any involvement by Roberts in his drug-dealing. The recorded interview was played at trial.

Jackson was charged with first-degree trafficking in a controlled substance (cocaine) and second-degree possession of a controlled substance

2

(hyrdocodone).[1] He was also charged with being a second-degree persistent felony offender (PFO). In the guilt phase of his trial, he was convicted of trafficking but acquitted of the remaining possession charge. The trial court then held a bifurcated penalty phase.

In the first part of the penalty phase, the Commonwealth presented evidence that Jackson had a prior trafficking conviction, and the jury instructions required the jury to find whether the subsequent-offender enhancement should apply to the conviction and to recommend a sentence in the applicable range. *See* KRS 218A.1412(3)(a) (providing first-degree trafficking in a controlled substance is a Class C felony for the first offense but a Class B felony for any second or subsequent offense). The jury found that the subsequent-offense enhancement should apply and recommended the statutory maximum sentence of twenty years. *See* KRS 532.060(2)(b).

In the second part of the penalty phase, evidence was introduced of a separate prior conviction (possession of stolen goods) to support the PFO charge. Also during this phase, the Commonwealth put on evidence relating to parole eligibility and other truth-in-sentencing matters. And Jackson introduced mitigating evidence in support of leniency—namely, his own testimony—as permitted by the truth-in-sentencing statute. Following this hearing, the jury found Jackson guilty of being a second-degree PFO but did not change its recommendation for a twenty-year sentence, which is the

---

[1] Jackson was also initially charged with third-degree possession of a controlled substance related to alprazolam (i.e., Xanax) pills that were apparently found in Roberts's purse during the search. The charge was dismissed before trial on the Commonwealth's motion.

statutory minimum under the enhanced PFO range. *See* KRS 532.080(5); KRS 532.060(2)(a).

Before final sentencing, Jackson retained new counsel, who moved for dismissal of the PFO conviction because KRS 532.080(10) precludes PFO enhancement for convictions where the penalty classification was increased because the conviction was a second or subsequent offense. The trial court granted the motion and dismissed the PFO charge. Jackson also asked the court to exercise its discretion under KRS 532.070 to impose a lesser sentence than recommended by the jury; this the court denied. Accordingly, the court entered a final judgment convicting Jackson of first-degree trafficking in a controlled substance, second offense, and sentencing him to twenty years' imprisonment.

He now appeals to this Court as a matter of right. *See* Ky. Const. § 110(2)(b). Additional facts will be developed as needed in the discussion below.

## II. Analysis

### A. The officers' hearsay testimony about statements made by anonymous tipsters was not reversible error.

Jackson claims error in the admission of testimony from police officers about the substance of anonymous tips they received alleging drug-trafficking activity at Jackson's apartment. He argues that the testimony was inadmissible hearsay and that its admission requires reversal.

"Hearsay" is any out-of-court statement "offered in evidence to prove the truth of the matter asserted." KRE 801(c). It is inadmissible unless it falls

4

under a recognized exception to the rule, *see* KRE 801A–804, none of which are applicable here.

The true issue here is whether the testimony was in fact hearsay. That is, the Commonwealth responds that the testimony was properly admitted, not to prove the truth of the matters asserted by the out-of-court tipsters—namely, that Jackson was dealing drugs out of his apartment—but to explain the actions the police took based on those statements, i.e., why they investigated Jackson in the first place. *See Sanborn v. Commonwealth*, 754 S.W.2d 534, 541 (Ky. 1988) ("The rule is that a police officer may testify about information furnished to him only where it tends to explain the action that was taken by the police officer as a result of this information *and* the taking of that action is an issue in the case. Such information is then admissible, not to prove the facts told to the police officer, but only to prove why the police officer then acted as he did. It is admissible *only if there* is an issue about the police officer's action.")

In support of its argument, the Commonwealth cites *Kerr v. Commonwealth* for the general proposition that "testimony explaining why a defendant had become a suspect in a drug investigation is relevant to avoid any implication that the defendant was unfairly singled out in the drug sting operation and to explain why the defendant was targeted." 400 S.W.3d 250, 256–57 (Ky. 2013). In doing so, however, the Commonwealth ignored that the Court in *Kerr* expressly qualified that statement by adding: "It should be sufficient for an officer to testify that he 'acted "upon information received" or words to that effect.'" *Id.* at 257 (quoting *Gordon v. Commonwealth*, 916 S.W.2d

176, 178 (Ky. 1995)). The Court further explained that there is "no legitimate need to say or imply that [the defendant] was a drug dealer or that he was suspected by the police department of selling drugs in a particular vicinity." *Id.* (quoting *Gordon*, 916 S.W.2d at 179). Such testimony, the Court made clear, "crosse[s] the line into inadmissible hearsay." *Id.* The same can be said about the testimony at issue here.

As in *Kerr*, we reject the Commonwealth's attempt to rebrand this testimony as non-hearsay offered to explain the officers' motivations in investigating and ultimately arresting Jackson. "The hearsay purposes of the anonymous tip evidence cannot be separated from its non-hearsay purposes." *Id.* at 258. This is particularly problematic where, as here, "[t]he anonymous tip reflect[s] directly on [the defendant's] guilt of the charged offense." *Id.*; *see also, e.g., Hughes v. Commonwealth*, 730 S.W.2d 934, 935 (Ky. 1987) (holding admission of hearsay testimony about anonymous tip reversible error because it reflected on the defendant's guilt).

And in any event, we have difficulty surmising how the officers' reasons for investigating and then arresting Jackson were relevant at all. The Commonwealth does not contend that the statements to police were needed to rebut an explicit charge by Jackson at trial that the officers fabricated their testimony. *Cf. Chestnut v. Commonwealth*, 250 S.W.3d 288, 294 (Ky. 2011) (holding testimony about statements to police admissible for non-hearsay purpose of proving officers' motive for arresting defendant, which was made an issue in part because defendant accused officer of lying during testimony). Yet to the extent that they may have had some relevance "to avoid any implication

6

that the defendant was unfairly singled out in the drug sting operation and to explain why the defendant was targeted," *Peyton v. Commonwealth*, 253 S.W.3d 504, 516 (Ky. 2008), as the Commonwealth contends, we reiterate that testimony to the effect that the officer "acted upon information received" would have sufficed as the preferable, and much more prudent, means to that end. As we emphasized in *Gordon*, "[t]he need for the evidence is slight, the likelihood of misuse great." 916 S.W.2d at 179 (quoting Robert G. Lawson, *The Kentucky Evidence Law Handbook* § 8.05 (3d ed. 1993)).

In sum, there was simply no legitimate or justifiable need to tell the jury that police suspected Jackson of being a drug dealer or that the police suspected that drugs were being sold out of Jackson's apartment based on anonymous tips. This was inadmissible hearsay.

However, whether its erroneous admission requires reversal is a different question. To that end, the parties dispute whether this claim was adequately objected to in the trial court below. But whether this error was properly preserved matters little because we easily conclude that it was harmless and also undoubtedly falls far short of rising to the level of palpable error.

As the Commonwealth points out, whether Jackson was dealing drugs out of his apartment was not a contested issue at trial because he admitted as much to police at the scene and later in making his recorded statement after his arrest. Consequently, even if we assume the error was preserved, we are confident that the jury's verdict was not "substantially swayed" by the improper testimony, and thus it was harmless. *Winstead v. Commonwealth*, 283 S.W.3d 678, 689 (Ky. 2009). And, if it is unpreserved and subject only to palpable-error

7

review under Criminal Rule 10.26, Jackson has not made the required showing of "probability of a different result or error so fundamental as to threaten [his] entitlement to due process of law" to demonstrate manifest injustice requiring reversal. *Martin v. Commonwealth*, 207 S.W.3d 1, 3 (Ky. 2006).

### B. Officer's testimony about contents of KASPER report was not palpable error.

Jackson's next claim of error involves testimony by a police officer about the contents of Jackson's and his girlfriend's Kentucky All–Schedule Prescription Electronic Reporting (KASPER) reports. At trial, Detective Brent Bridgeman testified that, in the course of his investigation, he obtained and reviewed both KASPER reports. According to the detective, those reports showed that neither Jackson nor his girlfriend had filled any prescriptions for hydrocodone from January 1, 2011, through September 28, 2011, the date the search warrant was issued. Jackson admits that this claim of error is unpreserved and asks this Court to review for palpable error.

Jackson claims that this testimony was inadmissible hearsay, violated his Sixth Amendment confrontation rights, and violated the disclosure restrictions on KASPER reports provided in KRS 218A.202.[2] While we agree

---

[2] KRS 218A.202(6) prohibits the Cabinet for Health and Human Services from disclosing KASPER data and reports to any persons or entities not specifically authorized to receive that data under the statute. Subsections (6)(a) through (j) list those persons and entities to whom disclosure by the Cabinet is authorized; for example, subsection (6)(b) authorizes disclosure to Commonwealth Attorneys and law enforcement officers, among others, who are "engaged in a bona fide specific investigation involving a designated person."

KRS 218A.202(8) prohibits recipients of KASPER data and reports from disclosing that information to other persons or entities except as expressly allowed by statute or by court order and then only to those who are themselves also authorized to receive the data. Subsections (8)(a) through (e) provide the express authorizations for

8

that the admission of this testimony was error, we need not overly analyze the substance of this claim because, as Jackson acknowledges, it is unpreserved and he has not demonstrated that it was palpable error.

It is clear that the improper testimony had little to no prejudicial effect. The detective's testimony was introduced to prove that the possession of the hydrocodone pills found in the apartment was unlawful because, according to the KASPER data, neither Jackson nor Roberts had been lawfully prescribed the drug in the ten or so months before law enforcement's search of the apartment. But for whatever reason, the jury acquitted Jackson of the possession charge. Even with the tainted evidence, then, the jury reached a result favorable to Jackson on the charge to which the evidence was directed. And Jackson has not demonstrated how the limited evidence about his KASPER data may have been prejudicial with respect to his trafficking conviction; nor can we conceive of any way that it would have been.

The admission of the KASPER testimony simply did not result in manifest injustice to warrant reversal for palpable error under Criminal Rule 10.26. That said, we caution the Commonwealth against introducing KASPER-related testimony in the future. Not only is it hearsay which implicates defendants' confrontation rights, but intentional unauthorized disclosures of this data violate the non-disclosure provisions of KRS 218A.202

---

sharing of data; for example, subsection (8)(a) authorizes persons specified under KRS 218A.202(6)(b) to share the data with other persons authorized under that subsection.

KRS 218A.202(12) makes intentional disclosure of transmitted KASPER data to persons not authorized by statute to receive the data a Class B misdemeanor for the first offense and a Class A misdemeanor for any subsequent offense.

and are subject to criminal penalties. And in a future case where the taintlessness of the error is less clear, we may be more inclined to find an improper admission of KASPER evidence to be reversible error.

## C. The penalty-phase procedures resulted in palpable error.

Lastly, Jackson claims entitlement to a new penalty phase, arguing that the procedures employed by the trial court denied him an opportunity to introduce mitigating evidence and plead for leniency before the jury made its sentencing recommendation, as is his prerogative under our state's truth-in-sentencing regime. *See* KRS 532.055(2)(b).

To resolve this claim, we begin by examining what happened in the trial below.

During a private in-chambers conference on the morning of the first day of the trial, among other things, the parties and the trial judge discussed how the "enhancement issues"—including the subsequent-offender and PFO penalty enhancements—would affect the make-up of the guilt and penalty phases of the trial. Though defense counsel kicked off this discussion by moving for "trifurcation" of the trial, the trial court interrupted before counsel could explain his request further, stating that "it had to be" trifurcated and correctly noting that there could be no mention that Jackson was a subsequent offender during the guilt phase of the trial. The court directed that if the jury found him guilty of trafficking, then the trial would proceed to a second stage to consider the subsequent-offender enhancement, which would be followed by a final PFO phase. The trial court specifically ruled that none of the PFO information would come in during the second stage; instead, the court explained, the

10

Commonwealth's proof of the prior trafficking conviction would be the only evidence to come in during the subsequent-offense phase. There were no objections raised to these procedures.

On the morning of the second day of trial, the parties again met with the judge in chambers to discuss the jury instructions and clarify the penalty-phase procedures. When the Commonwealth noted that the judge's penalty-phase instructions did not include a PFO instruction, the judge explained that he had prepared two drafts depending on the outcome of the guilt phase.[3] (Guilt-phase closing arguments and jury deliberations were scheduled for that morning.)

The judge and parties then discussed that only the prior trafficking conviction could be submitted for the subsequent-offender enhancement, while only a prior conviction of receiving stolen property would be used for the PFO enhancement because that was what was listed in the indictment. And the Commonwealth added that it would then be able to introduce the remainder of Jackson's prior convictions in "final sentencing." Defense counsel also notified the others that he planned on putting on (truth-in-sentencing) testimony in the

_____

[3] Although it is not entirely clear, it appears that this was based on a mistaken belief that a misdemeanor conviction was still possible at that time. This seems to be the case because the judge went on to explain that if the jury found Jackson guilty "on the misdemeanor," then they would need to get the sentencing on that conviction out of the way before moving on to sentencing on the trafficking conviction and PFO charge (presumably because the PFO statute does not apply to misdemeanor offenses). But at that time, there remained no possibility of Jackson being convicted of a misdemeanor offense; all that remained were the felony charges of first-degree trafficking of cocaine and first-degree possession of hydrocodone. *See* KRS 218A.1412(3); KRS 218A.1415(2). The only misdemeanor offense charged under the indictment, third-degree trafficking in a controlled substance (alprazolam), *see* KRS 218A.1417(2), had already been dismissed on the Commonwealth's motion as noted above.

11

final sentencing phase. And the Commonwealth similarly reiterated that, "at final sentencing," it planned on recalling the witness through which it would put on proof of Jackson's entire criminal history and would also call "someone from probation and parole to talk about truth-in-sentencing issues." Again, no objections were raised.

After the jury convicted Jackson of trafficking but acquitted him of the possession charge, the parties and trial court reconvened to confirm that the subsequent-offense instructions were correct; there were no objections. During this conference, the trial court also explained how the subsequent-offense phase was going to work. After allowing the jury to break for lunch, the court explained, the Commonwealth would put on its evidence of the prior trafficking offense, then the court would read the instructions and both sides would be permitted to make statements before the jury was released to deliberate "for purposes of this penalty phase."

And that is what occurred. The Commonwealth put on proof of Jackson's prior trafficking conviction, argued that the proof spoke for itself, and asked the jurors to convict him of the second-offense enhancement. The defense declined to put on proof or make any statements at that time.

The instructions for this first part of the penalty phase required the jury to find whether Jackson had previously been convicted of first-degree trafficking and thus was guilty of being a subsequent offender. If the jury found him not guilty of being a subsequent offender, the instructions directed them to recommend a sentence on the basic trafficking offense (five to ten years); if the jury found him guilty of being a subsequent offender, they were directed to fix

12

punishment within the subsequent-offender enhanced range of ten to twenty years in lieu of the basic range. Having so found him guilty, the jury recommended twenty years.

The trial court then held the final part of the sentencing phase. In this phase, the Commonwealth put on proof of the prior receiving-stolen-property conviction on which the PFO charge was based and also called a witness to testify about probation and parole matters. (The trial court did not allow the Commonwealth to put on proof of Jackson's entire criminal history, however, because the indictment only listed the one conviction for PFO enhancement.[4]) Jackson also put on his mitigating evidence during this phase, pleading with the jury for leniency in sentencing him. After this final phase, the jury found him guilty of being a second-degree PFO, but it recommended only the minimum sentence of twenty years out of a possible fifty years under the PFO-enhanced range.

---

[4] We note that it was also error for the trial court to prohibit the Commonwealth from introducing evidence of Jackson's entire criminal history during the sentencing hearing. The truth-in-sentencing statute authorizes the Commonwealth to put on certain proof during the sentencing hearing, including "[t]he nature of prior offenses for which [the defendant] was convicted." KRS 532.055(2)(a)2. While the court was correct that the Commonwealth can only prove a PFO charge with proof consistent with the indictment, that does not mean that proof of other convictions is inadmissible at sentencing when a jury must also determine PFO status. Instead, it suffices that the instructions adequately direct the jury what prior conviction it must find in order to convict on the PFO charge. The other prior convictions are admissible for the jury to consider in fixing the sentence within the applicable range.

We further note that not only is there no need to bifurcate such a sentencing hearing—that is, to allow the jury to determine guilt or innocence on the PFO charge before it considers evidence of other prior convictions in a truth-in-sentencing phase—the statute in fact *precludes* such a procedure. *See* KRS 532.055(3) ("All hearings held pursuant to this section shall be combined with any hearing provided for by KRS 532.080 [the truth-in-sentencing statute].").

13

But before final sentencing by the trial court, Jackson apparently obtained new counsel, who moved for dismissal of the PFO conviction, arguing that KRS 352.080(10) bars PFO enhancement of convictions—such as Jackson's first-degree trafficking, second offense—where the available penalty range was increased as a result of it being a subsequent offense. Jackson's argument was correct because KRS 532.080(10)(a) bars PFO enhancement of an offense "if the penalty for that offense was increased ... from a lower felony classification to a higher felony classification, because the conviction constituted a second or subsequent violation of that offense."[5] Thus, the court granted the dismissal but still sentenced Jackson to twenty years in prison as the jury had recommended for the subsequent-offender enhanced conviction, declining to exercise its discretion under KRS 532.070 to impose a lesser sentence of ten years as requested by Jackson's new counsel on the motion to dismiss. Although Jackson had asked the trial court to reduce his sentence, he did not at that time ask for a new sentencing hearing.

Jackson now contends that he is entitled to a new penalty phase to allow the jury to hear his mitigation evidence before recommending a sentence within the subsequent-offender enhanced range of ten to twenty years' imprisonment. Acknowledging that this claim of error is also unpreserved, he again requests that we review for palpable error under Criminal Rule 10.26.

First, the Commonwealth responds by arguing that there is no error to review. According to the Commonwealth, because Jackson's post-trial motion

---

[5] The statute goes on to list exceptions not applicable here.

asked only that the PFO conviction be dismissed and did not otherwise request any additional curative measures be taken (such as a new penalty phase), the trial court's granting of that request left no error to be reviewed. The Commonwealth contends that "[b]y asking for certain relief ..., being granted that relief, and asking for no other relief, Jackson signaled his satisfaction with the trial judge's action ... [, and] he cannot now ask for additional relief."

The problem with this position is that the trial court did not grant all of Jackson's requested relief; it denied his request to impose a sentence of ten years rather than the twenty years recommended by the jury. So contrary to the Commonwealth's contention, Jackson did not exhibit satisfaction with the trial court's actions. *Cf. Johnson v. Commonwealth*, 105 S.W.3d 430, 441 (Ky. 2003) ("Appellant received all the relief he requested ('That would be fine. That's what I want.'); thus, there is no error to review."). The fact that he did not also request a new penalty phase at that time does not mean that he was satisfied with the relief he did receive.

Second, the Commonwealth responds to Jackson's request for palpable-error review by arguing that he, in fact, was not prevented from putting on truth-in-sentencing evidence during the subsequent-offender phase. Instead, because he expressly declined to put on evidence in this phase when given an opportunity to do so, the Commonwealth contends that Jackson waived any objection to the procedures employed below.

Rather than waive the issue, however, our review of the record demonstrates that Jackson's counsel at trial had merely operated under the mistaken belief that the process proposed by the trial court—namely, a

15

bifurcated penalty proceeding, with only evidence of the prior trafficking conviction to be considered during the first part of the penalty phase—was appropriate. It is clear that both parties and the trial court below believed that no additional evidence would be admissible during that phase of the trial. This was driven, no doubt, by the trial court's erroneous decision to allow a PFO enhancement and to bifurcate the penalty phase as a result. So the failure to introduce mitigating evidence before the jury recommended a sentence under the enhanced penalty range for being a subsequent offender, based on a misunderstanding of the legal rights involved, was manifestly a failure to recognize and assert that right (or to object to the process preventing him from exercising that right), rather than an intentional waiver of a recognized right.[6] Thus, we will treat this claim of error as unpreserved and subject to palpable-error review, rather than waived and not subject to review.

We therefore turn to review Jackson's substantive claim of palpable error. Accordingly, we will reverse only if convinced the error left uncorrected would result in "manifest injustice." RCr 10.26. "[T]he required showing is probability of a different result or error so fundamental as to threaten a defendant's entitlement to due process of law." *Martin v. Commonwealth*, 207

---

[6] As federal courts have recognized, "[t]o distinguish between forfeiture [where plain- (or palpable-) error review is available] and waiver [where errors are not subject to review], we examine a party's state of mind at the time that an objection could have been raised." *United States v. Anderson*, 604 F.3d 997, 1001 (7th Cir. 2010). "Forfeiture takes place when counsel or a defendant negligently bypasses a valid argument." *Id.* On the other hand, "waiver requires a calculated choice to stay silent on a particular matter." *Id.* (citing *United States v. Olano*, 507 U.S. 725, 733 (1993) ("[W]aiver is the 'intentional relinquishment or abandonment of a known right.'") (citations omitted)).

16

S.W.3d 1, 3 (Ky. 2006). And "[t]o discover manifest injustice, a reviewing court must plumb the depths of the proceeding ... to determine whether the defect in the proceeding was shocking or jurisprudentially intolerable." *Id.* at 4.

Jackson is correct that under the truth-in-sentencing statute, he was entitled to "introduce evidence in mitigation or in support of leniency" during a sentencing hearing before the jury. KRS 532.055(2)(b). And he was entitled to have the jury consider that evidence before being instructed on the applicable punishment range and recommending a sentence within that range. KRS 532.055(2)(c). This included the initial decision imposing a sentence on the trafficking offense in the first part of the penalty phase.

As such, the penalty-phase procedures employed here were clearly erroneous. They required the jury to recommend a sentence within the subsequent-offender enhanced range before the truth-in-sentencing hearing was held, in violation of the statute. And that error was not cured by the trial court's holding the hearing during the second (PFO) sentencing phase in which the jury made its final recommendation on Jackson's sentence because a sentence had already been recommended on the trafficking conviction. By delaying the truth-in-sentencing evidence until the (improper) PFO phase, the trial court effectively barred the jury from considering evidence that it was required to consider in reaching its recommendation on Jackson's sentence for trafficking. And thus, after the PFO count was properly dismissed, the court was left with the twenty-year recommendation, which was necessarily tainted because the jury arrived at it without the benefit of the truth-in-sentencing information called for by the statute.

17

Jackson's sentence was thus the product of a sentencing process that wholly contravened the purposes and requirements of KRS 532.055. *See Furnish v. Commonwealth*, 267 S.W.3d 656, 661 (Ky. 2007) ("[T]he Kentucky truth-in-sentencing statute is designed to provide the jury with information relevant to arriving at an appropriate sentence for a particular offense."). We are constrained to conclude, then, that this error rises to the level of palpable error. The palpable error is that Jackson has been ordered to serve a sentence that the jury recommended without having heard any of the truth-in-sentencing evidence they were supposed to have heard to allow them to make an informed sentencing decision. Allowing the jury to recommend a sentence without holding the truth-in-sentencing hearing, we believe, was a fundamental, jurisprudentially intolerable error that threatened the essential fairness of the penalty phase of the trial and thus resulted in manifest injustice.

Consequently, we reverse Jackson's sentence and remand this matter to the trial court for a new sentencing hearing in compliance with KRS 532.055. Because the truth-in-sentencing statute applies only after the return of a guilty verdict, our holding has no effect on the jury's verdict finding the trafficking conviction to be subject to the subsequent-offense enhancement.

### III. Conclusion

For the reasons set forth above, Jackson's conviction for first-degree trafficking in a controlled substance, second offense, is affirmed. His sentence of twenty years in prison is reversed and the matter is remanded to the Shelby Circuit Court for a new sentencing hearing consistent with this opinion.

18

All sitting. All concur.


COUNSEL FOR APPELLANT:

Michael L. Goodwin
600 West Main Street
Suite 100
Louisville, Kentucky 40202


COUNSEL FOR APPELLEE:

Andy Beshear
Attorney General

Jeffrey Allan Cross
Assistant Attorney General
Office of Criminal Appeals
Attorney General's Office
1024 Capital Center Drive
Frankfort, Kentucky 40601