In the

# United States Court of Appeals

## For the Seventh Circuit

No. 17-2307

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

DERRICK D. BELL, also known as
ROCK,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Western Division.
No. 3:16-cr-50011-1 — **Frederick J. Kapala**, *Judge.*

ARGUED MARCH 29, 2018 — DECIDED APRIL 10, 2018

Before BAUER, FLAUM, and MANION, *Circuit Judges*.

BAUER, *Circuit Judge.* During the execution of a search warrant on January 15, 2016, ATF agents found Derrick Bell in possession of a .40 caliber pistol. Bell was charged with being a felon in possession of a firearm on March 1, 2016, in violation

of 18 U.S.C. § 922(g)(1), and on February 6, 2017, he pleaded guilty pursuant to a plea agreement.

In the Presentence Investigation Report (PSR), the Probation Officer calculated Bell's total offense level as 23, with a criminal history category of VI, for a Sentencing Guideline range of 92 to 115 months. The PSR stated that "the [G]uideline range for a term of supervised release is 1 year to 3 years." *See* U.S.S.G. § 5D1.2(a)(2). The Probation Officer also filed a separate sentencing recommendation, which provided a chart breaking down the statutory and Guideline ranges for supervised release. Finally, the government filed a "Notice of Agreement Regarding Supervised Release," which stated that the government recommended a term of supervised release within the Guidelines range of one to three years.

The district court sentenced Bell to 98 months' imprisonment, to be followed by three years of supervised release. On appeal, Bell raises three procedural challenges to his sentence. Since we conclude that the district court did not commit any errors, we affirm.

## I. DISCUSSION

### A. Failure to Calculate the Guidelines Range for Supervised Release

Bell first argues that the district court procedurally erred when it failed to explicitly make a Guidelines calculation for his term of supervised release on the record. We review procedural errors at sentencing *de novo*. *United States v. Gibbs*, 578 F.3d 694, 695 (7th Cir. 2009). However, we have previously reviewed a district court's failure to calculate the supervised

release Guidelines range for plain error. *United States v. Oliver,* 873 F.3d 601, 610 (7th Cir. 2017). Even under *de novo* review, we find no error.

The Supreme Court has said that "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *Gall v. United States,* 552 U.S. 38, 49 (2007). Failing to calculate the Guidelines range is a "significant procedural error." *Id.* at 51. While the Guidelines have separate calculations for a custodial sentence and supervised release, they both form the overall sentence. *See United States v. Kappes,* 782 F.3d 828, 837 (7th Cir. 2015) ("Any term of supervised release is considered part of the overall sentence.").

However, we have previously held that "'an explicit announcement of the [G]uidelines recommendation' for supervised release, although helpful for purposes of appellate review, is not required." *Oliver,* 873 F.3d at 610 (quoting *United States v. Anderson,* 604 F.3d 997, 1004 (7th Cir. 2010). "Rather, the critical inquiry is whether the district court was aware of and understood the Guidelines recommendation for supervised release." *Id.* In examining whether the district court understood the Guidelines calculation for supervised release, we examine whether the court imposed a within-Guidelines sentence, and whether the court explicitly referenced the PSR during the sentencing. *See id.* at 610–11; *Anderson,* 604 F.3d at 1004.

In *Gibbs,* we remanded for resentencing because the district court imposed a term of supervised release twice as long as the Guidelines range, while only acknowledging the statutory range. *Gibbs,* 578 F.3d at 695. Thus, we could not conclude "that

the district court correctly calculated the advisory Guideline range." *Id.* at 695–96. However, the district court here, like in *Oliver* and *Anderson*, imposed a term of supervised release within the Guidelines range. *See Oliver*, 873 F.3d at 606; *Anderson*, 604 F.3d at 1000. The court also made numerous references to the PSR, the Probation Officer's sentencing recommendation, and the separately filed "Notice of Agreement Regarding Supervised Release," all of which contained the Guidelines calculation for supervised release. Moreover, we are confident the court was aware of the contents of these documents because it explicitly adopted the Guidelines calculation contained in the PSR for the term of imprisonment, as well as the agreed modifications to the PSR's recommended conditions of supervised release. Accordingly, the court did not err in imposing a three-year term of supervised release without making a specific Guidelines calculation on the record.

## B. Consideration of Departure Provisions in the Sentencing Guidelines

Next, Bell argues that the district court procedurally erred when it considered the Guidelines' departure provisions as "controlling authority" during its 18 U.S.C. § 3553(a) analysis. Our review of the record does not support this conclusion.

When the Guidelines were mandatory, a district court could impose a sentence outside the Guidelines range only through the departure provisions. *United States v. Brown*, 732 F.3d 781, 786 (7th Cir. 2013). After the Guidelines became advisory in *United States v. Booker*, 543 U.S. 220 (2005), the departure provisions were rendered obsolete. *United States v. Lucas*, 670 F.3d 784, 791 (7th Cir. 2012). However, we have

stressed that "district courts can still take guidance from the departure provisions … and apply them by way of analogy when assessing the § 3553(a) factors." *Id.* Accordingly, we have never held that the departure provisions "are irrelevant to the sentencing process." *United States v. Pankow*, 884 F.3d 785, 794 (7th Cir. 2018). In fact, § 3553(a)(5) contemplates that a district court will consider "any pertinent policy statements" contained in the Guidelines.

During the district court's § 3553(a) analysis of Bell's arguments in favor of a below-Guidelines sentence, the court correctly relied on our precedent regarding the departure provisions and policy statements. The court acknowledged that while the formal departure analysis is obsolete, the departure provisions could be used as "guidance" and applied "by way of analogy." As the court analyzed each of Bell's mitigation arguments in the course of its § 3553(a) analysis, it referenced, "by way of analogy," a particular policy statement regarding specific offender characteristics. *See, e.g.*, U.S.S.G. § 5H1.3 (mental and emotional conditions); § 5H1.6 (family ties and responsibilities); § 5H1.12 (lack of guidance as a youth and similar circumstances). The court did not treat the policy statements as controlling authority; rather, it appropriately considered them as part of the entire § 3553(a) analysis in finding that a below-Guidelines sentence was not warranted.

### C. Consideration of Bell's History and Characteristics

Finally, Bell argues that the district court did not consider his history and characteristics in their totality during the § 3553(a) analysis. Once again, our review of the record leads us to conclude otherwise.

The district court began its § 3553(a) analysis by noting Bell's arguments in mitigation: his difficult upbringing; his supportive family and their circumstances; his history of depression, a learning disability, and substance abuse; and his remorse. The court also discussed arguments in aggravation: Bell's lengthy criminal history; his failure to comply with court-ordered supervision; and his possession of a loaded gun. Each of Bell's arguments in mitigation were then dealt with thoroughly, in turn, with the court noting countervailing arguments in aggravation. The court concluded that "in sum," none of the arguments in mitigation warranted a below-Guidelines sentence, although it would "give due mitigating consideration to the points raised by the defense." Clearly, the court considered Bell's arguments in mitigation as a whole—it simply was not persuaded they justified a below-Guidelines sentence.

## II. CONCLUSION

For the foregoing reasons, the sentence is AFFIRMED.